**In re WWG INDUSTRIES, INC., Debtor.**

**CHEMICAL BANK, as assignee of WWG Industries, Inc., Plaintiff,**

v.

**GRISBY'S WORLD OF CARPET, INC., Defendant.**

**Bankruptcy No. 82–156R.
Civ. A. No. C84–343R.**

United States District Court,
N.D. Georgia,
Rome Division.

Nov. 28, 1984.

Kevin C. Greene, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for plaintiff.

Paul T. Carroll, III, Rome, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This case represents one of many suits brought against non-resident defendants by

Chemical Bank, as assignee of WWG Industries, to collect on accounts allegedly owed WWG, the debtor in bankruptcy in the underlying bankruptcy action. The defendant in this case objects to the bankruptcy court's findings as to jurisdiction and venue, as to certain set-offs and rebates, and as to its liability for debts incurred by a related corporation. The defendant has filed its objections pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L.No. 98–353, 1984 U.S. Code Cong. & Ad. News (98 Stat.) 333, 341 (to be codified at 28 U.S.C. § 157(c)(1)). After reviewing *de novo* the issues raised by defendant's objections, the Court adopts in part the findings and conclusions of the bankruptcy court.

## JURISDICTION

■ Defendant first objects to the bankruptcy court's exercise of subject matter jurisdiction in the wake of the Supreme Court's opinion in *Northern Pipeline Construction Company v. Marathon Pipeline Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Under the newly enacted amendments to the Bankruptcy Act, however, jurisdiction in this type of case is vested in the Article III district court. The Constitution grants Article III courts the power to determine cases that arise under the laws of the United States and to decide controversies between citizens of different states. U.S. Const. art. 3, § 2, cl. 1. Whether this case involves a "federal question" or "diversity of citizenship" or both, Congress clearly had the power to place subject matter jurisdiction of this case in the United States District Court. This was accomplished in Section 101 of the new Bankruptcy Amendments.

■ Defendant also objects to the Court's exercise of personal jurisdiction over the defendant in this case. In light of the *Marathon* case, this objection raises questions that have not yet been fully addressed. Prior to *Marathon*, it was possible to posit that the bankruptcy courts were federal Article I tribunals created by Congress pursuant to Article I of the Constitution. *See* U.S. Const. art. I, § 8, cl. 4 and 18; *In re G. Weeks Securities, Inc.*, 5 B.R. 220 (Bkrtcy.W.D.Tenn.1980). The courts generally held that Congress had sufficiently indicated that the bankruptcy courts' personal jurisdiction should be as broad as possible, such that minimum contracts with the forum state were unnecessary. *In re Nixon Machinery Co.*, 15 B.R. 131, 135 (Bkrtcy.E.D.Tenn.1981). The bankruptcy courts found that personal jurisdiction over defendants in related bankruptcy proceedings was nationwide, much like the personal jurisdiction exercised by district courts in cases involving a federal question.[1]

The bankruptcy court in *In re Schack Glass Industries* thus found minimum contacts to a state forum irrelevant. The court found that Congress, when it enacted 28 U.S.C.A. § 1471 (Supp.1984), gave "bankruptcy courts comprehensive jurisdiction of all civil proceedings under, or in, or related to bankruptcy and reorganization cases." *In re Schack Glass Industries Co., Inc.*, 20 B.R. 967, 970 (Bkrtcy.S.D.N.Y. 1982). Moreover, Congress provided for nationwide service of process so that a state service of process statute need not be borrowed. *See* Rule 7004(d) of the Bankruptcy Rules and Official Forms. This grant of comprehensive jurisdiction, however, has since been found unconstitutional.

---

**1.** *Id.*

Personal jurisdiction in federal question cases was succinctly explained by the Seventh Circuit in *Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir.1979). When the federal courts are exercising federal question jurisdiction under the Constitution, state sovereignty is not in issue. The forum with which minimum contacts are necessary under the Due Process clause of the Fifth Amendment is not a state forum, but the United States. *Id.* Minimum contacts with the forum state in a federal question case are only necessary when, under Rule 4(e) of the Federal Rules of Civil Procedure, the state service of process statute must be borrowed to affect service on a non-resident. *See Volk Corp. v. Art-Pak Clip Art Service*, 432 F.Supp. 1179, 1180 n. 2 (S.D.N.Y. 1977).

■ The *Marathon* case eliminated the theory that the bankruptcy courts could be given plenary jurisdiction under Article I. *See Marathon, supra*, 458 U.S., at 63–76, 102 S.Ct. at 2867–2874. In response, Congress, rather than grant the bankruptcy courts Article III status, chose to place the type of non-core, related bankruptcy proceeding involved in this case with the district court. Thus the issue is no longer whether Congress has granted full plenary power to Article I bankruptcy courts to hear related cases such that personal jurisdiction exists without minimum contacts. The issue facing this District Court is whether, in deciding the purely state-law issues raised by this non-core proceeding, the Court is exercising federal question jurisdiction such that minimum contacts are irrelevant or whether the Court is exercising diversity jurisdiction such that minimum contacts analysis under the Fourteenth Amendment Due Process Clause is implicated. The Court finds that, despite the state law nature of the issues raised in this case, these issues are ancillary to the bankruptcy action. Rather than a diversity action, the Court has before it a state-law claim ancillary to the federal claim in the underlying bankruptcy action. Thus, the defendant's amenability to process under state law is irrelevant. *Terry v. Raymond International, Inc.*, 658 F.2d 398, 402 (5th Cir.1981) (Unit A).

■ The concept of ancillary personal jurisdiction is clearly extended in this non-core bankruptcy proceeding where the state-law issues are contained in a separate action related to the federal statutory action, rather than in the same action as ancillary claims. Nonetheless, the concept of ancillary jurisdiction is the only constitutional basis on which to explain Congress's grant of subject matter jurisdiction to this Court, in what will be 28 U.S.C. § 1334(c)(2), over certain non-diverse actions based purely on state-law claims. Section 1334(c)(2) states:

Upon timely motion of a party in proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 1984 U.S.Code Cong. & Ad.News (98 Stat.) 333 (to be codified at 28 U.S.C. § 1334(c)(2)). The import of the section is that Congress is asking the district courts, in certain situations, to hear purely state-law questions that do not involve diversity of citizenship or a federal question. The only means by which to find this congressional enactment constitutional is to adopt the concept of ancillary jurisdiction. Thus the Court holds that, as the district courts have personal jurisdiction in federal bankruptcy actions over any person with minimum contacts with the United States, and as the Bankruptcy Act permits nationwide service of process, this Court has ancillary personal jurisdiction over the non-resident defendant in this related case. This is true even though the defendant lacks minimum contacts with the forum state.

### VENUE

■ As recognized in the bankruptcy opinions considering the issue of venue, this broad power over persons located throughout the United States must be tempered by liberally reading the change of venue provision for bankruptcy courts. *See* 28 U.S.C.A. § 1475 (Supp.1984); *In re Advent Corp.*, 20 B.R. 561 (Bkrtcy.D.Mass. 1982). The power of a debtor in bankruptcy or its creditor to reel persons from all over the country into a single forum should be abrogated when the greater relative inconvenience shifts to the defendant. In this case a change of venue at this point in the proceedings would serve no useful purpose.

### GRIGSBY'S CARPET AND GRIGSBY'S WORLD OF CARPET

■ Defendant Grigsby's World of Carpet, Inc. ("Grigsby's World") objects to the bankruptcy court's finding that it is liable for amounts allegedly owed by Grigsby's Carpet, Inc. ("Grigsby's Carpet"). Defendant argues that the Court should not, under the law, "pierce the corporate veil" and dissolve the juristic wall that separates the two corporations. Plaintiff argues that the two corporations acted in concert as joint venturers and that therefore each is liable for the debt they incurred in that capacity.

Considering first the plaintiff's theory as adopted by the bankruptcy court, the Court finds the law of joint ventures set forth in the Fifth Circuit case, *Putnam v. Williams*, 652 F.2d 497 (5th Cir.1981) (Unit B).

> A joint venture relationship is characterized by a number of identifying features. In a joint venture arrangement, two or more people combine property and skill to conduct for profit a single business transaction, as opposed to a continuing business enterprise. The venturers enjoy joint proprietary interest, the right to control each other's conduct, and the obligation to share in losses as well as profits.

*Id.* at 500–01. The plaintiff sought to prove that the two entities, Grigsby's Carpet and Grigsby's World, had a history of working cooperatively, and that they had held themselves out as related entities. The plaintiff relied especially on its proof that the two corporations had only one account with WWG and that they presented themselves in a unified manner to WWG. The proof, if anything, suggests "a continuing business enterprise" such that placing the juristic construct, "joint enterprise" over the relationship would be improper. The similar juristic construct, "partnership", would be more appropriate, but the proof fails to show the requisite joint proprietary interest, right to control the other party's conduct, and the obligation to share in losses as well as profits.

*See Burks v. Newton*, 149 Ga.App. 810, 256 S.E.2d 75 (1979).

As for the theory that the corporate veil should be pierced in this case, the Court finds no intermingling of the corporate affairs sufficient to warrant the judicial construction of an entity that combines the two corporations. The defendant's proof showed that the two corporations maintain separate facilities and separate books and records. Each corporation employs its own personnel and has different shareholders. The plaintiff, on the other hand, introduced into evidence a letter in which the president of Grigsby's Carpets wrote: "We are operating the two Companies on a co-operative basis, just as we have in the past, sharing warehouse and office services." The following response by the Seventh Circuit is appropriate in this case.

> We cannot help but note the abundant evidence in the record that [WWG's] officers were experienced businessmen who fully understood the nature of related corporate structures .... That [WWG] understood ... the companies to be somewhat related, but fully aware of their separate corporate identities, is obvious from the evidence.

*C M Corp. v. Oberer Development Co.*, 631 F.2d 536, 540 (7th Cir.1980). The Court finds WWG's accounting procedures in keeping both corporations on a single account number unpersuasive as evidence that WWG was unaware of the separate corporate existence of the two entities. The corporations submitted separate annual reports to WWG. *See* Plaintiff's Exhibit 7. Moreover, plaintiff's accountant was apparently able to determine from the purchase orders and underlying documentation of the account which of the two corporations was responsible for the various items listed on WWG's account statement. *See* Bkrtcy.Tr.Trans. 75–78. The plaintiff's proof thus fails to show that Grigsby's World was the "alter ego" of Grigsby's Carpet. *See Cornwell v. Williams Brothers Lumber Co.*, 139 Ga.App. 773, 229 S.E.2d 551 (1976).

Considering both the testimony of Mr. White, who testified as an officer of Grigsby's World as to which of the invoices were owing from that corporation, and the testimony of Chemical Bank's accountant, who testified that she researched the underlying documentation, the Court finds that Grigsby's World, the defendant in this case, is responsible for the accounts owing as reflected on the invoices numbered 03617, 13617, and 06849. The amounts on these invoices sum to $8,202.39.

## DEFENDANT'S REMAINING OBJECTIONS

After considering *de novo* the remaining objections filed by the defendant, the Court adopts the bankruptcy court's findings of fact and conclusions of law as to these objections.

1. The Court adopts the finding that the carpet reflected on invoice number 06849 was received by Grigsby's World and that no set-offs or rebates are warranted as to the remaining invoices.

2. The Court adopts the finding that WWG's business records were properly introduced into the record by WWG's former credit analyst.

3. The Court adopts the finding that the stipulated assignment of WWG's accounts to the plaintiff were properly before the bankruptcy court, and this Court, as part of the record in the underlying bankruptcy action.

4. The Court adopts the finding that the "Conditions of Sale" printed on WWG's invoice, as the only evidence presented in the case of a written contract for the sale of goods, represent the contractual agreement between the parties.

ACCORDINGLY, the Court directs that final judgment be entered for the plaintiff in the amount of $8,202.39, plus interest as provided for in the contract amounting to $3,666.47, as well as reasonable attorney's fees in the amount of $1211.88 (pursuant to the contract and O.C.G.A. § 13-1-11(a)(2) (1982)).