In re DeLOREAN MOTOR COMPANY, a Michigan corporation, Debtor.

David W. ALLARD, Jr., Trustee in Bankruptcy, Plaintiff,

v.

Robert Weld BENJAMIN; Van Ginkel & Benjamin, a partnership; Henry I. Bushkin; Cristina Ferrare DeLorean, a/k/a Cynthia Cristina Ferrare, individually and as trustee u/t/a dated July 29, 1982, as amended January 25, 1983; Mary Jacqueline Feddock; Ted M. Gans; Thomas W. Kimmerly, individually and as trustee u/t/a dated July 29, 1982, as amended January 25, 1983; Thomas W. Kimmerly, P.C., a Michigan professional corporation; Kimmerly, Gans & Shaler, P.C., a Michigan professional corporation; Robert S. Gay; Midland Insurance Company, a corporation; Roy S. Nesseth; Dennis H. Patouhas; Joseph H. Penrose; Scarborough and Company, a division of Ryan Services Corporation, an Illinois corporation; James H. Season; Edward L. Smith; James G. Stark; Richard C. Swanson, d/b/a Swanson Insurance Agency; Mary A. Thoman; Thoman & Co., P.C., a Michigan professional corporation, Defendants.

Bankruptcy No. 82–06031–G.
Adv. No. 84–1032–G.

United States Bankruptcy Court, E.D. Michigan, S.D.

June 3, 1985.

Sheldon S. Toll, Honigman, Miller, Schwartz and Cohn, Detroit, Mich., for plaintiff.

Robert W. Benjamin, Fenwick, Stone, Davis & West, Richard A. Anderman,

Christy & Viener, Louis E. Black, Zimet, Haines, Moss & Friedman, William H. Horton, Jr., Towne, Dolgin, Sawyer & Horton, Eric C.P. Van Ginkel, Rogers, Hoge & Hills, Robert P. Wessely, Quaslia Richter Schneider & Wessely, Frank H. Wohl, Lankler Siffert & Wohl, New York City, for Van Ginkel & Benjamin.

Henry I. Bushkin, Bushkin, Gaims & Gaines, Jerome L. Goldberg, Los Angeles, Cal., for Cristina Ferrare DeLorean.

Ted M. Gans, Thomas W. Kimmerly, Bloomfield Hills, Mich., Albert A. Miller, Garan, Lucow, Miller, Lehman, Seward & Cooper, P.C., David Griem, Detroit, Mich., for Mary A. Thoman.

B. Ward Smith, Cozadd, Shangle, Smith & Andrews, Dearborn, Mich., for Robert S. Gay and Richard A. Swanson.

Hyman, Gurwin, Nachman, Friedman & Winkelman, J. Leonard Hyman, Irwin J. Alterman, Richard Biasio, Southfield, Mich., for Henry I. Bushkin.

Garan, Lucow, Miller, Seward, Cooper & Becker, P.C., Albert A. Miller, Detroit, Mich., for Ted M. Gans.

Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C., J.V. Walker, Detroit, Mich., for Robert Weld Benjamin.

Schlussel, Lifton, Simon, Rands, Kaufman, Galvin & Jackier, Donald B. Lifton & Douglas E. Busbey, Southfield, Mich., for Edward L. Smith.

Rubenstein, Isaacs, Lax & Bordman, Erwin A. Rubenstein, Southfield, Mich., for Mary A. Thoman & Thoman & Co.

Hardig, Goetz, Heath, Merritt & Reebel, Joseph L. Hardig, Jr., Birmingham, Mich., for James G. Stark.

Keywell and Rosenfeld, Phillip B. Maxwell, Troy, Mich., for Joseph H. Penrose.

Garan, Lucow, Miller, Seward, Cooper & Becker, P.C., Albert A. Miller, Detroit, Mich., for Thomas W. Kimmerly, Thomas W. Kimmerly, P.C. and Kimmerly, Gans & Shaler, P.C.

Tyler & Thayer, P.C., David M. Tyler, Michael J. Walter, Detroit, Mich., for Midland Ins. Co.

## AMENDED ORDER DENYING MOTION TO DISMISS FOR SUBJECT MATTER JURISDICTION, DENYING MOTIONS FOR DISCRETIONARY AND MANDATORY ABSTENTION, DENYING MOTIONS TO WITHDRAW REFERENCE, AND DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

RAY REYNOLDS GRAVES, Bankruptcy Judge.

Plaintiff in this adversary proceeding, David W. Allard Jr., Trustee, seeks recovery of punitive and actual damages, and property in excess of $100,000,000 from various officers, directors, professional persons and insurance companies employed by the DeLorean Motor Company (DMC). The trustee contends the Defendants breached their fiduciary duty to DMC causing property of the estate to be, *inter alia,* fraudulently transferred and mismanaged prior to the filing of a Chapter 11 petition in bankruptcy on October 25, 1982. From October 25, 1982 through December 21, 1983, DMC operated as Debtor-in-Possession. The case was subsequently converted to Chapter 7.

Named in the 45 page 12 count complaint are: Robert W. Benjamin, a nonresident of the State of Michigan, who was a director of DMC, member of the executive committee of DMC and chairman of the audit committee of the board of DMC; Van Ginkel and Benjamin (VGB), a law firm and nonresident partnership with its principal place of business in the State of New York. Benjamin acted as a partner, agent and member of VGB. Benjamin and VGB were employed and retained by DMC for legal counsel; Henry Bushkin, a nonresident of the State of Michigan and licensed to practice in the State of California, director of DMC and a member of the audit committee of the board, retained by DMC for legal counsel; Cristina Ferrare DeLorean, a nonresident of the State of Michigan, and wife John Z. DeLorean, a director of DMC and trustee under an agreement of trust between John Z. DeLorean, Thomas W. Kimmerly and Cristina DeLorean, dated July

29, 1982, as amended on January 25, 1983 [1]; Mary J. Feddock, a nonresident of the State of Michigan and residing in the State of New York. Prior to April 19, 1982, Feddock was employed by DMC as a legal assistant; from April 16, 1982, Feddock was the assistant secretary for DMC, and after October 25, 1982, Feddock performed duties for the debtor-in-possession; Thomas W. Kimmerly, a resident of the State of Michigan, licensed to practice law and a certified public accountant in the State of Michigan. Kimmerly was a director of DMC, a member of the executive committee of the board, secretary and executive vice president of DMC, and trustee under the trust, dated July 29, 1982, as amended; Kimmerly was also director of DeLorean Motor Company Limited (DMCL) from 1979 to 1981; on April 16, 1982, Kimmerly resigned his position as director and executive vice president of DMC but is alleged to have continued to attend meetings of the board and worked at the office of DMC and performed as a *de facto* officer and director of DMC; Thomas W. Kimmerly, P.C., (TWKPC), a professional corporation operating in the State of Michigan in which Thomas Kimmerly was a shareholder, officer, agent and director, acting within the scope of his various capacities; Ted M. Gans, a resident of the State of Michigan and licensed to practice law in the State of Michigan, and secretary of DMC; Kimmerly, Gans, & Shaler, P.C., (KGSPC), a law firm and a Michigan professional corporation in which Gans and Kimmerly were shareholders, officers, agents, directors and acted consistent with their capacities. KGSPC, TWKPC, Kimmerly and Gans were each retained by DMC to provide legal services; Robert S. Gay, an individual residing in the State of Michigan who was a director of DMC and a member of the audit committee of the board; Midland Insurance Company, a New York corporation with its principal place of business in the State of New York, authorized in doing business in the State of Michigan and holder of one or more policies for DMC; Roy S.

Nesseth, a nonresident of the State of Michigan and resident of the State of California, and who served as assistant to the chairman of the board of directors and vice president and director of DMC; Dennis H. Patouhas, a nonresident of the State of Michigan and a resident of the State of Connecticut and the controller for DMC; Joseph H. Penrose, a resident of the State of Michigan and employed as a vice president of the DMC; Scarborough and Company, a division of Ryan Services Corporation, an Illinois corporation, authorized to do business in Michigan; James H. Season, a nonresident of the State of Michigan, and a resident of the State of Connecticut, a director of DMC and assistant treasurer of DMC; Edward L. Smith, a resident of the State of Michigan and president of Composite Technology Corporation, a subsidiary of DMC; James G. Stark, a nonresident of the State of Michigan, and a resident of Connecticut, a director of DMC, member of the executive committee, vice president-finance and executive vice president of DMC, director of DMCL, a subsidiary of DMC; Richard C. Swanson, a resident of the State of Iowa, director of DMC and a member of the audit committee of the board, d/b/a Swanson Insurance Agency, and acting as an agent for DMC and its affiliates; Mary A. Thoman, a resident of the State of Michigan, a certified public accountant in Michigan, employed by Kimmerly, TWKPC and KGSPC, as a legal assistant and corporate officer of same; and Thoman & Company, P.C., (TCPC), an accounting firm, a Michigan professional corporation in which Thoman was a shareholder, officer, and director acting within those capacities. Both Thoman and TCPC provided accounting services to DMC.

Defendants object to the Court's authority to enter a final judgment in these proceedings. Separate or concurrent motions have been filed to dismiss for personal jurisdiction; subject matter jurisdiction; discretionary and mandatory abstention, withdrawal of reference, quash summons

---

**1.** A stipulation and order has been filed requiring Ferrare to file a response to the complaint 30 days after she receives written notice from the trustee of a request to file a response. To date, trustee has not filed a request for a response from Ferrare.

and summary judgment. Defendants argue counts I–IV, VI, VIII, IX, X, and XII are non-core proceedings limiting the Court to findings of fact and conclusions of law. Specifically, counts I–IV seek damages from various officers and directors of DMC for breach of their fiduciary duties. Counts VI prays damages from VGB, TWKPC and KGSPC for breach of their professional duty to DMC. Count VIII seeks recovery from TCPC for breach of fiduciary duty to DMC. Count IX alleges Defendants Benjamin, Feddock, Kimmerly, Gans, CFD, and Nesseth exercised wrongful and unauthorized dominion and control over property owned of DMC depriving DMC of the use, benefit, of the property. Count X alleges Benjamin, Feddock, Kimmerly, CFD, Gans & Nesseth united or conspired to commit various wrongs specified in the complaint. In addition, count XII seeks a declaratory judgment against Midland. Defendants agree count V, an action to recover property of the estate, and count VII, a preference action under 11 U.S.C. § 547 are core proceedings. Additionally, this Court finds count XI to recover property conveyed "with the specific intent to hinder, delay and defraud" creditors to be a core proceeding under 11 U.S.C. § 548.

Defendants'[2] initial challenge is to the validity of M.C.L.A. § 600.705(6). The long-arm statute grants personal jurisdiction over persons acting as director for a Michigan corporation. Buskin maintains though he served as a director for DMC "he has done nothing in Michigan or caused anything to be done in Michigan, directly or indirectly regarding the DeLorean Motor Co." Buskin declaration at 2. The minimum contacts test of *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, *Reh'g. Denied*, 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92, (1958), Buskin argues, precludes personal jurisdiction.

**2.** Buskin and Benjamin.

**3.** Similarly, Defendants Buskin, Benjamin & Midland objections on diversity jurisdiction and

■ Neither the state courts of Michigan nor the federal courts located therein have interpreted M.C.L.A. § 600.705(6). Generally, where a state has an interest in regulating operations and transactions by nonresidents, it has the power to enact appropriate legislation to bring a nonresident into its forum in actions affecting transactions in that state. *Wagenberg v. Charleston Wood Products*, 122 F.Supp. 745 (E.D.S.C.1954). In a bankruptcy proceeding, however, minimum contacts "has no particular relevance." *In re Whippany Paper Board Co.*, 15 B.R. 312, 315 (Bkrtcy. N.J.1981). *In re WWG Industries, Inc.*, 44 B.R. 287 (N.D.Ga.1984); *In re Bell & Beckwith*, 41 B.R. 697 (Bkrtcy.N.D.Ohio 1984); *Matter of D.H. Overmeyer Co., Inc., (Ohio)*, 40 B.R. 990 (S.D.N.Y.1984); *In re Sportfame of Ohio, Inc.*, 40 B.R. 47 (Bkrtcy.N.D.Ohio 1984); *Matter of Baker's Equipment/Winkler, Inc.*, 33 B.R. 307 (Bkrtcy.N.J.1983); *In re Schack Glass Industries Co., Inc.*, 20 B.R. 967 (Bkrtcy.S.D. N.Y.1982); *In re Nixon Machinery Co.*, 15 B.R. 131 (Bkrtcy.E.D.Tenn.1981); *In re Weeks Securities, Inc.*, 5 B.R. 220 (Bkrtcy. W.D.Tenn.1980). Issues of bankruptcy are federal questions. "The court has personal jurisdiction over any person with minimum contacts with the United States and as [Bankruptcy Rule 7004(d)] permits nationwide service of process, this Court has ancillary personal jurisdiction over the nonresident defendant in this [proceeding]. This is true even though the Defendants lack minimum contacts with the forum state." *In re WWG*, 44 B.R. at 290. *Handley v. Indiana & Michigan Electric Co.*, 732 F.2d 1265 (6th Cir.1984).[3] *McRae Fire Protection*, 49 B.R. 773, 776 (Bkrtcy. E.D.Mich.1985).

■ Midland Insurance Co., motions to dismiss asserting M.C.L.A. § 500.404 operates by means of Fed.R.Civ.P. 18(b) to preclude the joining of insurance companies as original defendants. The statute protects the interests of insurers in jury trials.

to quash summons are misplaced. *See also In re Environmental Research & Development*, 46 B.R. 774 (S.D.N.Y.1985); *In re WWG Industries*, 44 B.R. 287 (N.D.Ga.1985).

*Moody v. Pulte Homes, Inc.,* 125 Mich.App. 739, 337 N.W.2d 283, (1983); *Cogo v. Moore,* 119 Mich.App. 747, 327 N.W.2d 345 (1982); *Mattie Awdish, Inc., v. Williams,* 117 Mich.App. 270, 323 N.W.2d 666 (1982). *Totzkay v. Dubois* 107 Mich.App. 575, 309 N.W.2d 674 (1981). Notwithstanding our finding, *infra,* that generally the right to jury trial does not exist in cases under title 11, we find the law in Michigan would permit joinder of insurance companies as original defendants in actions for economic losses. *Matte Awdish, Inc.,* 117 Mich.App. at 277, 323 N.W.2d at 669. ("In our opinion M.C.L.A. § 500.3030 [sic] which prohibits any mention of an insurer is inapplicable to actions seeking [recovery for] economic losses . . . .")

The Court is also presented the task of charting its subject matter jurisdiction amidst unchartered seas and a plethora of objections from as many defendants.[4] Such is our fate in light of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and the Bankruptcy Amendments & Judgeship Act of 1984. "The thrust of the *Northern Pipeline* holding is that *peripheral,* non-traditional bankruptcy issues such as claims by the bankrupt against non-creditor defendants cannot be adjudicated by a non-Article III judge." *White Motor Company v. Citibank, N.A.,* 704 F.2d 254, 263 (6th Cir. 1983). (Emphasis Added.) *Northern Pipeline* noted, however, that as of a general matter "bankruptcy adjudications themselves, as well as the manner in which the rights of debtors and creditors are adjudicated are matters of federal law." *North-*

*ern Pipe Line,* 102 S.Ct. at 2878, n. 36. But the Court failed to delineate the amount of state common law involvement in traditional bankruptcy matters converting a core proceeding to a non-core proceeding, and limiting the bankruptcy Court's jurisdiction to findings of fact and conclusions of law.

 The existence of state law cause of actions arising in or under title 11, standing alone does not confer jurisdiction on the bankruptcy court to entertain and decide a state law cause of action. The cause of action must not only be related, but demonstrated to be inextricably tied to the bankruptcy proceeding affecting the liquidation of the assets or the adjustment of the debtor-creditor relationship. In *Baker v. Highland* and *Pustelak v. VanDenberghe,* 50 B.R. 34 (Bkrtcy.E.D.Mich. 1985), this Court found the intimate relationship between state common law proceedings and the reorganization of the Debtor to have had a demonstrative effect on the Debtor's reorganization to warrant adjudication by this Court. In *Baker,* mortgagors sued defendant investors, who had been assigned mortgages by the debtors, for recission of the mortgage. To the extent recission would impact the schedule of assets and liabilities, fix the liability of the debtor to the defendant and plaintiff, and result in losses of principal or income to the debtor, the action affected the debtor's reorganization. Where the state law claim is only tangentially related to a federal bankruptcy proceeding, a transformation of the state law claim to a federal bankruptcy question does not occur.[5] *In re*

---

**4.** If we could first know where we are, and whither we are tending, we could better judge what to do, and how to do it. We are now far into the [fourth] year since [*Northern Pipeline*] was initiated with the avowed object and confident promise of putting an end to [bankruptcy] agitation. Under the operation of that policy, that agitation has not only not ceased, it will not cease until a crisis shall have been reached and passed. 'A house divided against itself cannot stand.' Lincoln's House Divided Speech (June 17, 1858) reprinted in Commager, *Vol. I, Documents of American History, 9th Edition.*

**5.** *See also Pacor, Inc., v. Higgins,* 743 F.2d 984 (3rd Cir.1984) finding a removed action involv-

ing "strangers" to a third-party action did not affect the estate. *Pacor* states the test to be applied in determining the jurisdiction:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the *outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* E.g., *In re Hall,* 30 B.R. [799, 802 (D.C. Tenn.1983)]; *In re General Oil Distributors, Inc.,* 21 B.R. 888, 892 n. 13 (Bankr.E.D.N.Y. 1982); *In re U.S. Air Duct Corp.,* 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981); 1 Collier on Bankruptcy ¶ 3.01 at 3–49. Thus, the proceeding need not necessarily be against the debtor or

*Bobroff,* 43 B.R. 746, 750 (E.D.Pa.1984). It is "the character of the claims asserted and the relationship of those claims to the bankruptcy proceeding" that defines a state law claim as related to a bankruptcy matter, limiting the Court to findings of fact and conclusions of law. *Id.* at 751. The arguments presented here provide little reason to turn from the direction of *Baker.*

Defendants are various officers, directors, and professional persons employed by DMC through October 25, 1982. Each was charged with the policy making decision of the corporation, managing of the daily affairs of the corporation, or advising the corporation so as to influence its operations. All Defendants, save Gans and Thoman, have filed proof of claims against the estate. Each is named in count V as having "obtained, retained and holding in constructive trust property of the estate by way of breach of the respective fiduciary duties." Defendants Benjamin, Buskin, Kimmerly, Gans and Nesseth are also named as insiders in count VII, a preference action under § 547(b)(4)(B)(i).

The trustee has commenced this adversary proceeding against the Defendants for, *inter alia,* the breach of fiduciary duties occurring prior to the filing of bankruptcy. An action for breach of fiduciary duty implies tangible and intangible assets of the corporation have been wrongfully converted or transferred by those responsible for their control. It connotes the transfers have been made to the detriment of the corporation and its creditors, and where the corporation is in liquidation, to its demise.

It cannot be gainsaid that a breach of fiduciary duty by officers of a Debtor-in-Possession is within the jurisdiction of the court. The breach impacts on the Debtor's ability to reorganize, and to pay creditors. *In re United Equipment Sales Co.,* 47 B.R. 818 (Bkrtcy.W.D.Mich.1985). *Matter of Schwens, Inc.,* 19 B.R. 681 (Bkrtcy. Minn.1981); *Matter of HappyTime Fashions, Inc.,* 7 B.R. 665 (Bkrtcy.S.D.N.Y. 1980); *Matter of Reading Co.,* 2 B.R. 719 (E.D.Pa.1980). The same breach by the same officers of the corporation days before the filing of bankruptcy can have the same detrimental affect on the debtor. *In re Mortgage America Corp.,* 714 F.2d 1266 (5th Cir.1983); *Robinson v. Watts Detective Agency,* 685 F.2d 729 (1st Cir.1982); *Matter of IMI, Inc.,* 17 B.R. 784 (Bkrtcy.E. D.Wis.1982); Compare *In re Vaniman Intern, Inc.,* 22 B.R. 166 (Bkrtcy.E.D.N.Y. 1982). "Where a corporation is defrauded bringing about ultimate bankruptcy, a cause of action exists on the part of the corporation against the wrongdoer." *Warren v. Manufacturers National Bank,* 759 F.2d 542, 545 (6th Cir.1985). The gravamen of the trustee's complaint is not only can the grave affects of a breach of duty be implied, they are present here; adjudication of the underlying issues are, therefore, essential to a timely, effective liquidation of the estate to satisfy creditors. We agree. The jurisdiction over matters clearly affecting the estate should not hang between core and non-core jurisdiction based solely on the filing of a petition in bankruptcy where the individuals and the activities to be litigated are not peripherally related to traditional bankruptcy matters.[6]

---

against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

743 F.2d at 994. (Emphasis Original)
In noting *Pacor* we do not retreat from our finding in *Baker* that under the facts presented there *Pacor* should not be read to require a more stringent test between parties demonstrated to be related to the debtor's estate.

**6.** Support is drawn from 28 U.S.C. § 157(b)(3) and the *rational* in *In re Environmental Re-*

*search & Development,* 46 B.R. 774 (S.D.N.Y. 1985). Section 157(b)(3) provides: "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law." Though differing in result, the court in *Environmental Research* found:

An alternative view of such proceedings would categorize them not as themselves involving a federal question but rather as being sufficient related to a central concern of the bankruptcy laws to justify their adjudication by federal courts employing the power of pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d

It has been argued that *Northern Pipe Line* brushes aside the importance of the congressional intention to create a functional bankruptcy system.[7] *Northern Pipe Line* does not alter the broad scope of the debtor's estate; it does alter the manner in which peripherally related state common law matters are adjudicated.[8] "No bankruptcy law shall be construed to eliminate rights which existed before the law was enacted in the absence of an explicit command for Congress." *U.S. v. Security Bank*, 459 U.S. 70, 81, 103 S.Ct. 407, 414, 74 L.Ed.2d 235, (1982). Similarly, the Court cannot construe property inextricably tied to a core proceeding so as to adjudicate the interests inconsistent with the manner intended by Congress.[9]

The congressional intention to place the adjudication of all bankruptcy proceedings in one forum has been articulated in *NLT Computer Service Corp., v. Capitol Computer Systems, Inc., et al.*, 755 F.2d 1253 (6th Cir.1985). Noting Congress amended 36 sections other than the bankruptcy statute itself, the Court concludes "the primary purpose of those amendments was to bring *all* adjudications of relative priorities in an insolvent's property within the bankruptcy proceeding. *Id.* at 1260. (Emphasis Added) The Court goes on to find:

> The revisions were substantial, important, and carefully considered even though in some aspects they did not pass constitutional muster. *See Northern Pipeline Construction Company v.*

218 (1966) provides the classic formulation of pendent jurisdiction: Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under (the) Constitution, the laws of the United States,' [sic] and the relationship between that claim and the state claim permits the conclusion that the *entire action* before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. [Citation Omitted] The state and federal claims must derive from a common nucleus of operative fact. 46 B.R. at 778. (Emphasis Added) The court also followed Justice Frankfurter's dissent in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), as footnoted in *In re Bobroff, supra*: [b]ankruptcy decisions may be justified by the scope of the bankruptcy power, *which may be deemed to sweep within its scope interest analytically outside the 'federal question' category, but sufficiently related to the main purpose of bankruptcy to call for comprehensive treatment.* 46 B.R. at 779. (Emphasis Added) *See also* King, *Jurisdiction & Procedure under the Bankruptcy Amendments of 1984,* —— VanD.L. Rev. —— (1985).

7. Tinkham, *Northern Pipeline Construction Co., and Raddzty: Clarification of the Article III constraints on Article I Courts*, 21 Hous.L.Rev. 397 (1984), *See also:* Hughes, *The Constitutionality of the Bankruptcy Court and the Ongoing Search for a Principled Distinction Between Article I and Article III Courts: A Re-evaluation after Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 35 Syracuse Law Review 829 (1984). Sano, *A Literal Interpretation of Article III Ignores 150 Years of Article I Court History: Northern Pipeline Construction v. Marathon Oil Pipe Line Co.*, 19 New England Law (1983).

8. See *In re Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1984), n. 9: "The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action [sic] and all other forms of property currently specified in § 70(a) of the Bankruptcy Act," and n. 10: "... We do not now decide the outer boundaries of the bankruptcy estate."

9. As this court noted in *Baker* "[u]nder the Canon of Statutory Construction, Congress is presumed to be aware of judicial interpretations of the statute. 'Congress cannot be presumed to have adopted one standard over another without some affirmative indication of which it preferred.'" *Baker*, 50 B.R. at 40, *citing N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). It can be argued that while Congress provided invidious treatment for personal injury tort or wrongful death claims other choses in action arising under § 541 are to be treated consistent with other core proceedings. *In re Arnett*, 731 F.2d 358, 360–361, (6th Cir. 1984), elaborates on the breadth of statutory construction.

> The primary function of the courts in contruing legislation is to effectuate the legislative intent. [citation omitted] Legislative intent may be ascertained from the clear language of the statute itself or from available legislative materials which clearly reveal this intent. Where the literal language of the statute does not conclusively reveal legislative intent, the courts must look beyond literal meaning, *analyzing the provision in the context with the whole.* (Emphasis Added)
> *See also* n. 14, *infra.*

*Marathon Pipe Line Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). It is apparent that although the Supreme Court and federal courts generally were concerned about the constitutionality of employing bankruptcy judges who do not enjoy Article III status, those courts were nonetheless vitally interested in upholding in other respects Congress' objectives in passing the bankruptcy reform law. The courts believed that the Bankruptcy Code was the result of extensive investigation over a long period of time and should be accorded its full meaning to the extent lawfully possible. *We believe that in few cases has the Supreme Court striven so carefully to avoid striking down an entire statute where a part of it is found unconstitutional. Also, the efforts of the Supreme Court and of the courts of appeals to enact interim rules to permit the orderly administration of bankrupt estates during the resolution of the constitutional issue stand as strong evidence of the courts' desire to accord as much meaning as practically possible to the intent of Congress.*

755 F.2d at 1261–62. (Emphasis Added) [10]

Under the 1984 Amendments, Congress intended and gave to bankruptcy courts broad jurisdictional authority, consistent with *Northern Pipe Line*, to adjudicate all matters demonstrated to affect the liquidation of assets or the debtor-creditor relationship. "[T]he involvement of state created rights in a bankruptcy matter does not, *ipso facto*, result in a finding that [the state law matter]" should not be adjudicated by this Court. *In re Tom Carter Enterprises*, 44 B.R. 605 (C.D.Ca.1984).[11] Where a state law cause of action arises under or in a case under title 11 and demonstrated to affect the estate it is a core pro-

ceeding under 28 U.S.C. § 157(b)(2)(*O*). The cause of actions within the trustee's complaint are exemplars. There can be little doubt that they significantly impact on these proceedings. In so finding, the Court is guided by the intention of Congress and "what will best assure an economical and expeditious administration of the debtors estate." *In re Atlas Automation*, 42 B.R. 246, 248 (Bkrtcy.E.D.Mich.1984). *Baker, supra.*

Alternatively, Defendants [12] urge the court to abstain pursuant to 28 U.S.C. § 1334(c)(1) and (c)(2). Congress neglected to provide the court with any direction on the application of either section other than the long arduous history in the wake of *Northern Pipe Line*.[13] Guidance on application of both sections can be obtained from an examination of three categories of abstention, deeply embedded in the function of the Federal Judiciary.

In *Ada-Cascade Watch Co., v. Cascade Resources Recovery, Inc.*, 720 F.2d 897 (6th Cir.1983), Judge Keith, writing for a unanimous court recounts the recent history of the abstention doctrine and the policy considerations for its application. The earliest category, the Pullman doctrine, began to take root in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Pullman abstention is appropriate where the resolution of uncertain state law issues can moot a federal constitutional issue or cause it to be presented in a different posture. *Ada-Cascade*, 720 F.2d at 902. A second category originated from *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Younger doctrine was based on a proper respect for state functions, a "recognition for the fact that the entire

---

10. *Id.*

11. "Nor is the federal character of a core bankruptcy proceeding changed by the fact that the substantive rights being adjusted are often created by state law." *Tom Carter Enterprises*, 44 B.R. at 609.

12. Buskin, Benjamin, Van Ginkel and Benjamin, and Thoman move for discretionary abstention.

Midland, Gans, Thoman, Van Ginkel and Benjamin, and Penrose move for mandatory abstention.

13. Countrymen, *Scrambling to define bankruptcy jurisdiction: The Chief Justice, The Judicial Conference, and the Legislative Process*, 22 Harv.J. on Legis. 1 (1985).

country is made up of a union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate function in their separate ways". *Ada-Cascade*, 720 F.2d at 902, *citing Younger v. Harris*, 401 U.S. at 44, 91 S.Ct. at 750. Application of the Younger doctrine to a non-criminal proceeding depends on a three prong test: (1) are there ongoing state judicial proceedings; (2) do the proceedings implicate important state interests; and (3) is there adequate opportunity in the state proceeding to raise constitutional challenges. *Ada-Cascade*, 720 F.2d at 902, *citing Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *U.S. v. Anderson*, 705 F.2d 184 (6th Cir. 1983).

■ The third category, Burford abstention, derives from *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). It is applied when the "exercise of federal review of the [state law] question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantive public concern." *Ada-Cascade*, 720 F.2d at 903, *citing Colorado River Water Conservation District*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976). The possibility that resolution of a federal question may result in the overturning of a state policy, however, is insufficient to warrant application of Burford abstention. The state must exhibit an overriding interest in the subject matter. Hence, application turns on whether an erroneous federal court decision could impair the state's efforts to implement its policy, *Ada-Cascade*, 720 F.2d at 903.

■ The doctrines apply when the record manifests a need to permit the state courts to operate free from federal interference. *Bulk Distribution Centers, Inc., v. Monsanto Co.*, 589 F.Supp. 1437, (S.D. Fla.1984); *Accident Fund v. Baerwaldt*, 579 F.Supp. 729 (W.D.Mich.1984); *Philmans, Inc., v. City of West Carrollton*, 577 F.Supp. 1380, (S.D.Ohio 1983). The

ability of the federal courts to abstain, as with any power to alter that which would go on if uninterrupted, is most effective when used to achieve a constitutional end. The doctrine has accordingly been viewed as "an extraordinary and narrow exception to the duty of the federal courts to adjudicate controversies which are properly before it". *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483, *reh'g. denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976). "The concept [of abstention] does not mean blind deference to 'States Rights' ..." It does, however, represent a "system in which there is sensitivity to the legitimate interest of *both* State and National Governments ..." *Younger*, 401 U.S. at 44, 91 S.Ct. at 750. (Emphasis Added)

■ The same policy considerations and the requirement that they manifest themselves *on the record* pervade the application of 28 U.S.C. § 1334 to bankruptcy proceedings. Section 1334(c)(1) permits the court, in its discretion, to abstain in the interest of justice, or in the interest of comity with state courts, or respect for state law. The Court should not abstain where the record reveals the policy considerations in favor of abstention do not exist. *In re Environmental Research & Development*, 46 B.R. 774 (S.D.N.Y.1985); *In re Swann Gasoline Company*, 46 B.R. 640 (Bkrtcy.Pa.1985); *In re S.E. Hornsby & Sons Sand & Gravel Co., Inc., (E.I. No. 72–0792818)*, 45 B.R. 988 (Bkrtcy.M.D.La. 1985); *In re Lorren*, 45 B.R. 584 (Bkrtcy. N.D.Ala.1984); *In re Tom Carter Enterprises, supra.* See also *State Bank of Lombard v. Chart House, Inc.*, 46 B.R. 468 (N.D.Ill.1985); *In re Ritter*, 46 B.R. 183 (Bkrtcy.E.D.Pa.1985); *In re Atlas Automation, supra.* We find the existence of state law claims, inextricably tied to traditional bankruptcy matters, without more, neither substitutes for the policy considerations outlined in *Ada-Cascade* nor warrant abstention in light of the congressional interest in having all bankruptcy matters adjudicated in one forum. Additionally, we find Defendants assert without demon-

strating the difficulty in ascertaining state law on the issues presented here. *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940). Nonetheless, the mere difficulty in ascertaining state law is an insufficient basis to decline to hear a case properly before this Court. *In re Mohammed*, 327 F.2d 616 (6th Cir.1964); *In re Anderson*, 24 B.R. 640 (Bkrtcy.M.D.Tenn.1982). Defendants' motion for discretionary abstention is DENIED.

To mandate abstention under § 1334(c)(2) each of the elements under that section must be established.

> Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be *timely adjudicated,* in a state forum of appropriate jurisdiction. (Emphasis Added)

28 U.S.C. § 1334(c)(2).

▮ Defendants Buskin, Van Ginkel, Berg and Penrose concur that counts V and VII are core proceedings and are not within the purview of § 1334(c)(2). The remaining counts, they argue, mandate abstention. Among the elements requiring mandatory abstention is a showing that state law issues can be "timely adjudicated" in a state court. In his most recent article [14] on jurisdiction Professor Lawrence King notes the section originates from § 57 of the Bankruptcy Act of 1898. Section 57 urged contingent or unliquidated claims which would unduly delay the administration of the estate be disallowed. Timely adjudication, therefore, requires an examination by the Court of the state court's calendar, the status of the bankruptcy proceeding, the complexity of the issues, and whether the state court proceeding would prolong the

administration, or liquidation of the estate. To date, the trustee has not commenced an action in the state court on the issues currently before the court. *See also In re McRae Fire Protection,* at 778–79, (Pendency of state action between private parties does not mandate abstention.) The Court takes judicial notice that due to the crowded dockets in this state, and in particular the Wayne County Circuit Court, if this proceeding was remanded to the circuit court the earliest trial date to be assigned would be 30–36 months hence. The underlying issues presented here arise from the same nucleus of facts, are intimately related, and are essential to an expeditious adjudication of these proceedings. Section 1334(c)(2) does not mandate the abdication of jurisdiction where irreparable delay, and injury will result to the interest of the estate or its creditors. *In re Butcher,* 46 B.R. 109 (Bkrtcy.N.D.Ga.1985); *In re S.E. Hornsby & Sons Sand & Gravel Co.,* 45 B.R. 988 (Bkrtcy.M.D.La.1985). The motion for mandatory abstention is DENIED.

Equally strong policy concerns pervade application of 28 U.S.C. § 157(d) regarding the withdrawal of reference. Two tests are provided, either may dictate withdrawal of reference.

> (d) The district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for *cause shown.* The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding *requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.* (Emphasis Added)

28 U.S.C. § 157(d).

In *In re White Motor Company,* 42 B.R. 693 (N.D.Ohio 1984), mandatory withdrawal of reference was held to be required "only if

---

**14.** King, *Jurisdiction & Procedure under the Bankruptcy Amendments of 1984,* —— VanD.L. Rev. —— (1985).

the [district court] can make an affirmative determination that resolution of the claims will require *substantial* and *material* considerations of those non-Code statutes." *Id.* at 705. (Emphasis Added) The mere speculation that non-Code statutes may be necessary to resolve the claim was rejected as wholly "inconsistent with the purposes underlying the very existence of the Bankruptcy Court and would encourage forum shopping in a manner Congress disdained when it sought to avoid creating a multiplicity of forums for the adjudication of part of the bankruptcy case." *Id.; Michigan Milk Producers Ass'n v. Hunter,* 46 B.R. 214 (N.D.Ohio 1985).

■ The "cause shown" test is, to be sure, an amorphous test. It is a chameleon within the legal lexicon whose definition is created by its application. In bankruptcy proceedings regarding the withdrawal of reference, cause shown is a "term yet to be explored in the context of specific cases." *Pacemaker Diagnostic Clinic of Am., Inc., v. Instromedix, Inc.,* 725 F.2d 537, 545, (9th Cir., 1984), cert. denied, —— U.S. ——, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). Its use in § 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless rebutted by a contravening policy. The presumption may be overcome only by an overriding interest based on a finding by the Court that the withdrawal of reference is *essential* to preserve a higher interest than that recognized by Congress and is narrowly tailored to serve that interest. *Press-Enterprise Co., v. Superior Court of California, Riverside County,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).

Local Rule 33 and the 1984 Amendments to title 28 heighten the presumption in favor of adjudicating all bankruptcy matters in the bankruptcy court. Local Rule 33 adopted by the U.S. District Court for the Eastern District of Michigan refers all bankruptcy matters to the bankruptcy court and provides:

> It is the intention of this court that the Bankruptcy Judges be given the *broadest possible authority* to administer cases properly within their jurisdiction and this rule *shall be interpreted to achieve this end.* (Emphasis Added)

Under the 1984 Amendments to title 28 the bankruptcy courts are subordinate adjuncts to the district courts. "[T]he district court retains primary jurisdiction over bankruptcy proceedings." *In re Tom Carter Enterprises,* 44 B.R. at 608. *In re Lemmons & Co., Inc.,* 742 F.2d 1064, 1067 (7th Cir.1984). The degree to which bankruptcy judges are controlled by the Article III judges under the amendments "avoids any violation of the separation-of-powers privileges that underlie the Article III protections to ensure an independent judiciary." *Fields v. Washington Metro Area Transit Authority,* 743 F.2d 890, 894 (D.C. Cir.1984); *In re Tom Carter Enterprises,* 44 B.R. at 608, *citing Pacemaker Diagnostic Clinic v. Instromedix, Inc.,* 725 F.2d 537 (9th Cir.1984); *See Also K.M.C. Co., Inc., v. Irving Trust Co.,* 757 F.2d 752, (6th Cir.1985) (Adopting *Pacemaker* ); *Baker, supra.*

■ Defendants proffer three theories to rebut the presumption; we find each to be insufficient. The first, requiring withdrawal due to the existence of state law issues,[15] must give way to the congressional intent and our finding of subject matter jurisdiction.

■ The second, requiring withdrawal due to the trustee's demand for jury trial,[16] overlooks the relationship of the right to jury trial to the forum of the action. *In re Graham,* 747 F.2d 1383, 1388 (11th Cir. 1984). Section 1411 of title 28 does not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to personal injury or wrongful death tort claims. 28 U.S.C.

---

**15.** Smith, Benjamin, Van Ginkel and Benjamin, Thomas, Penrose and Midland move to withdraw based on state law issues or jury demand.

**16.** Buskin, Gans, Thoman, Van Ginkel and Benjamin, and Penrose.

§ 1411. In *In re McLouth Steel*, 38 B.R. 316 (Bkrtcy.E.D.Mich.1984), this Court found that generally, there is no right to jury trial under the Bankruptcy Code. "Cases, causes, and claims arising under title 11 are summary proceedings and are to be tried by the Court sitting without a jury." *Id.* at 317, *citing Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). There can be "no right to jury trial where the U.S. Supreme Court has said none exist." *McLouth*, 38 B.R. at 317; *In re Graham, supra; In re Best Pack Seafood, Inc.*, 45 B.R. 194 (Bkrtcy.Me.1984); *In re Minton Group, Inc.*, 43 B.R. 705 (Bkrtcy.S.D.N.Y.1984); *In re Country Junction, Inc.*, 41 B.R. 425 (D.C.Tex.1984). *See Also Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727, 730 (M.D.Ga.1985), ("Withdrawal is not required on account of the prospect of a jury trial in the bankruptcy court."); *In re Lombard-Wall, Inc.*, 44 B.R. 928 (Bkrtcy.S.D.N.Y.1984).

The third theory, requiring withdrawal of reference due to the constitutional invalidity of the Bankruptcy Amendments and Federal Judgeship Act of 1984,[17] has recently been addressed and rejected in *In re Moody*, 46 B.R. 231, (N.C.1985). The case presented "similar or identical" arguments to those advanced in the leading case on this issue, *In re Benny*, 44 B.R. 581 (N.D. Cal.1984). The arguments presented by defendants here are substantially the same concerns addressed in *Benny* and its progeny regarding the constitutionality of retroactive legislation. Applying the post-*Benny* decisions, *In re Moody, supra; In re Tom Carter Enterprises, supra; In re Acme-Dunham, Inc.*, 45 B.R. 227 (Bkrtcy. Me.1984), and *Matter of Bricker Systems, Inc.*, 44 B.R. 952, (Bkrtcy.E.D.Wis.1984), to the arguments advanced by Defendants finds, "[w]ithdrawal of the reference on constitutional grounds [would be inappropriate.]" *In re Moody*, 46 B.R. at 233. The motion for withdrawal of reference is DE-NIED.[18]

Defendant Buskin now moves for summary judgment on counts V & VII. The declaration in support maintains Buskin acted "solely as a director," not as an attorney for the company and the compensation received was reimbursement for expenses incurred while performing as a director for DMC. Buskin declaration, page 2, paragraph 10. No other exhibits, or documents supporting the motion have been submitted.

"In ruling on a motion for summary judgment, the Court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further the papers supporting the movant are closely scrutinized, whereas the opponents are indulgently treated." *Bohn Aluminum & Brass Corp., v. Storm King Corp.*, 303 F.2d 425 (6th Cir.1962). *Accord United States v. Hodges X-Ray, Inc., et al.*, 759 F.2d 557 (6th Cir.1985); *Tee-Pak, Inc., v. St. Regis Paper Co.*, 491 F.2d 1193, (6th Cir.1974). When the pleadings, depositions, affidavits and admissions filed in the case show there is no genuine issue of any material fact, summary judgment should be granted "where it is clear what the truth is ..." *Poller v. Columbia Broadcasting Co., Inc.*, 368 U.S. 464, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The declaration, standing alone, does not provide the court with the quantum of truth necessary to find material issues do not exist. Accordingly, we find Defendant's motion for summary judgment should be, and hereby is, DE-NIED.

IT IS SO ORDERED.

---

17. The intervening parties in *Benny* also joined in *Moody*. In these proceedings notice was given en the U.S. Attorney General pursuant to 28 U.S.C. § 2403. No other parties have sought intervention.

18. Pursuant to sections B(1)(a)(i) and B(1)(a)(iii), the above constitutes recommendation to the District Court on the motions for abstention, under 28 U.S.C. § 1334(c), and for withdrawal of reference, under 28 U.S.C. § 157(d).