In re CORAL PETROLEUM,
INC., Debtor.

TOTAL PETROLEUM, INC., Plaintiff,

v.

CORAL PETROLEUM, INC., United Refining, Inc., Kiantone Pipeline Corporation and Lakehead Pipeline, Inc., Defendants.

Bankruptcy No. 83–02460–H2–5.
Adv. Nos. 83–2302–H1, 83–1754–H3.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Aug. 1, 1986.

Steven Zager, Fulbright & Jaworski, Houston, Tex., for Total Petroleum, Inc.

Laura Steinberg, Sullivan & Worcester, Boston, Mass., for Lakehead Pipeline, Inc.

James T. McCartt, Susman, Godfrey & McGowan, Houston, Tex., for Lakehead Pipeline, Inc.

## Memorandum Opinion

R.F. WHELESS, Jr., Bankruptcy Judge.

### FACTS

This action was commenced in the United States District Court for the Western District of Pennsylvania on May 20, 1983 by a complaint for an injunction to restrain Kiantone Pipeline Corporation (Kiantone) from making delivery, and to restrain United Refining, Inc. (United) from accepting delivery, of certain shipments of oil which United had purchased from Coral Petroleum, Inc. (Coral). The oil had previously been purchased from the plaintiff, Total Petroleum, Inc. (Total). Jurisdiction over the three original defendants, Coral, United, and Kiantone, was premised on diversity of citizenship.

During the relevant time period, Coral was the direct parent of United, which was the direct or indirect parent of United Refining Co. and Kiantone. On June 2, 1983, Coral filed a voluntary petition under Chapter 11 of title 11 in this Court. United Refining Co. and its subsidiaries, Kiantone and United Refining Co. of Pennsylvania, filed petitions for reorganization in this Court on September 16, 1983.

On June 3, 1983, Total filed an amended complaint seeking possession of oil or, in the alternative, payment therefore. The action was subsequently removed to the Bankruptcy Court for the Western District of Pennsylvania, on motion of Coral, United, and Kiantone. On further motion of Coral, United, and Kiantone, the case was thereafter transferred to the Houston Bankruptcy Court by Order dated September 23, 1983. Lakehead Pipeline, Inc. (Lakehead) was added as a party defendant in February 1984.

The Second Amended Complaint alleges that plaintiff sold oil to Coral, on credit, in reliance upon a letter issued by Coral which misrepresented Coral's financial condition as being solvent. Certain deliveries of the oil were allegedly placed in the Lakehead or Kiantone pipelines. Upon learning of Coral's insolvency, plaintiff allegedly issued a stop delivery notice to all defendants, including Lakehead, pursuant to the Uniform Commercial Code. It is alleged that this notice was ignored by defendants. Lakehead allegedly predelivered oil to Unit-

ed and diverted or retained other deliveries of oil. Under the Uniform Commercial Code, plaintiff alleges a right to recover either the oil or its value from defendants.

Plaintiff's claims were subsequently settled with all defendants except Lakehead. An Order of Partial Non-Suit was signed on March 13, 1986. 60 B.R. 377. Lakehead is presently moving to dismiss the plaintiff's remaining claims on the ground that the bankruptcy court lacks subject matter jurisdiction to hear the remainder of the case.

In support of its motion to dismiss, Lakehead asserts that neither of the remaining parties is a debtor in a pending bankruptcy case and that a judgment would not affect property of the estate. According to Lakehead, plaintiff's remaining claims are state law claims which are unrelated to the bankruptcy proceeding and thus beyond this Court's jurisdiction. Total responds that the settlement of the claims against the debtor does not destroy the subject matter jurisdiction of this Court. Total maintains that the bankruptcy court has pendent jurisdiction over its remaining claim against Lakehead.

## DISCUSSION

■ In determining whether subject matter jurisdiction exists in this case, we must refer to the facts which existed at the date of the filing of the complaint. *See Gresham Park Community Organization v. Howell,* 652 F.2d 1227, 1236 n. 25 (5th Cir.1981); *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 248 (7th Cir.1981); *International Harvester Co. v. Deere & Co.* 623 F.2d 1207, 1210 (7th Cir. 1980). Certainty is served by not allowing an event occurring during the pendency of the suit to create or destroy jurisdiction. *See Wright, Miller, & Cooper,* 13B Federal Practice and Procedure 452 (1984) ("if jurisdictional prerequisites are satisfied when the suit is begun, subsequent events will not work an ouster of jurisdiction.") *E.g.,*

*Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113–14 n. 1, 1 L.Ed.2d 1205 (1957) (change of citizenship occurring after the filing of the complaint will not divest the federal court of jurisdiction).

Movant relies on *Boelens v. Redman Homes, Inc.,* 759 F.2d 504 (5th Cir. 1985), for the proposition that the voluntary amendment of plaintiff's complaint, which dropped the claims that provided federal jurisdiction, had the effect of destroying federal jurisdiction. In that case, federal jurisdiction had rested on the federal question that had been dropped by the amendment. The *Boelens* court based this conclusion on the general rule that "an amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading."[1] 759 F.2d at 508 (citations omitted).

This rule is not inconsistent with the rule that jurisdiction is determined by looking at the facts which exist at the time of filing the complaint, but merely clarifies which complaint is determinative in the situation where the original complaint has been amended.

In the case at bar, there has been no amendment of the complaint to drop any federal causes of action. The Second Amended Complaint asserts claims against all defendants, including the debtor. Merely the facts and not the allegations have changed, in the respect that the claims have been settled against all defendants other than Lakehead.

Thus, we must examine whether jurisdiction existed at the time of filing the Second Amended Complaint. The subsequent settlement of the claims against all defendants other than the movant does not affect this analysis. The Fifth Circuit has expressly held that the federal court has the power to hear pendent state claims after the main claim has been dismissed. *Breen v. Centex Corp.,* 695 F.2d 907, 914 (5th Cir. 1983). *See also Rosado v. Wyman,* 397

---

**1.** The court distinguished the case of original federal question jurisdiction from that where the case has been removed from state court. In the removal situation, the plaintiff's amendment of the complaint to drop all federal questions will not destroy federal jurisdiction.

U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970); *In re Coordinated Pretrial Proceedings, Etc.,* 520 F.Supp. 635, 649–50 (D.Minn.1981) (court retained ancillary jurisdiction over attorney's fees dispute six years after the main action had been settled and dismissed with prejudice).

The proper focus in determining the jurisdictional issue is on the district court because the bankruptcy court is a unit of the district court. 28 U.S.C. § 151. *Firestone v. Dale Beggs & Associates (In re Northwest Cinema Corp.),* 49 B.R. 479 (Bankr.D. Minn.1985). The district court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The district court may provide that bankruptcy cases and proceedings shall be referred to bankruptcy judges. 28 U.S.C. § 157(a). Pursuant to the Order of Reference dated August 9, 1984, the district court for the Southern District of Texas made such a referral. Thus, 28 U.S.C. § 1334 defines the limits of the bankruptcy court's jurisdiction.

28 U.S.C. § 157 provides for certain controls to be maintained by the district court after an order of referral has been entered. If a proceeding is a "core proceeding" arising under title 11 or arising in a case under title 11, the bankruptcy judge may enter a final judgment or order thereon. 28 U.S.C. § 157(b)(1). Such judgments or orders are subject to review by the district court under 28 U.S.C. § 158. Under 28 U.S.C. § 157(c)(1), a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. Any final order in such proceedings must be entered by the district court after the bankruptcy judge has submitted proposed findings of fact and conclusions of law to the district court. The district court may withdraw any referred case or proceeding for cause. 28 U.S.C. § 157(d).

Substantial controversy exists in defining proceedings "related to a case under title 11." Some courts would require the action to have a direct and significant impact on the estate or its administration. *Uranga v. Geib,* 755 F.2d 421, 425 (5th Cir.1985) ("exercising jurisdiction over a collateral controversy is improper where it is 'possible' to administer the estate without resolving the controversy"); *Pacor v. Higgins,* 743 F.2d 984, 995 (3d Cir.1984) (debtor must be bound by res judicata or collateral estoppel, or automatic liability of the debtor must exist, in order to find that a civil proceeding has an effect on the estate); *In re John Peterson Motors, Inc.,* 56 B.R. 588 (Bankr.D.Minn.1986) (third party action filed by defendant in preference action brought by the estate against the debtor's principal for indemnity was beyond the court's "related to" jurisdiction); *In re D.L. McKinney,* 45 B.R. 790 (Bankr. W.D.Ky.1985); *In re Dickenson Lines, Inc.,* 47 B.R. 653 (Bankr.D.Minn.1985).

Other courts hold that a broader interpretation of the statute more closely reflects congressional intent. *In re Salem Mortgage Co.,* 783 F.2d 626, 634–35 (6th Cir.1986) (finding of definite liability on the part of the estate is not a condition precedent to finding an action related to a bankruptcy proceeding); *In re Fleet,* 53 B.R. 833, 838 (Bankr.E.D.Pa.1985) (action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate); *In re Showcase Natural Casing Co., Inc.,* 54 B.R. 142 (Bankr.S.D.Ohio 1985) (action brought by secured creditor of debtor against guarantor of debt was "related to" debtor's reorganization case); *Matter of Boughton,* 49 B.R. 312 (Bankr.N.D.Ill.1985).

■ If the claims against the debtor had not been settled in the present case, the resolution of Total's claim against Lakehead would not necessarily determine the rights or liabilities of the debtor.[2] The

---

2. The Court recognizes that the debtor may presently have a defense of release, however that fact does not destroy jurisdiction.

debtor would be free to litigate any issue, or adopt any position, on Total's claim against it. The Court therefore finds that the parties' rights are not so inseparably intertwined to consider the action against Lakehead a related proceeding within the jurisdictional grant of 28 U.S.C. § 1334.

■ Absent an independent statutory basis for jurisdiction, a federal court is empowered to adjudicate state law claims under the doctrines of pendent or ancillary jurisdiction. Lakehead contends that the power to exercise ancillary or pendent jurisdiction is possessed by the district courts, but not the bankruptcy courts. According to Lakehead, the outer limits of the bankruptcy court's jurisdiction is over those claims which are "related proceedings" as defined in 28 U.S.C. § 1334. Lakehead supports this viewpoint with the argument that, pursuant to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the bankruptcy courts cannot constitutionally adjudicate state law claims between nondebtor third parties. According to Lakehead, Congress intended to limit the bankruptcy court's power to adjudicate state law claims in enacting 28 U.S.C. § 1334, and, for that reason, the bankruptcy court cannot exercise pendent or ancillary jurisdiction over state law claims.

This argument is not supported by either the legislative history to the 1984 Amendments or the subsequent case law interpreting the jurisdictional grant in § 1334. The 1984 Amendments, in response to the constitutional objections voiced in *Marathon,* vested jurisdiction and control over the adjunct bankruptcy courts in the district courts. The redrawn court structure is in contrast to that held unconstitutional in *Marathon,* which vested the bankruptcy courts with independent jurisdiction to determine state law claims. As was stated in *In re Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y.1985),

> *Marathon* concerned a court structure vastly different from that crafted by the Bankruptcy Amendments and Federal Judgeship Act of 1984. As therein reconstituted, the bankruptcy courts are adjunct to the district courts where jurisdiction is vested pursuant to 28 U.S.C. § 1334 (1984). The bankruptcy courts assist, upon reference, in the exercise of the mandate subject to four considerable controls: withdrawal of the reference of both core and related proceedings pursuant to § 157(c)(2), the opportunity for *de novo* review by the district court of related proceedings pursuant to § 157(c)(1), retention of the ability of the district court to enter final orders and judgments in such proceedings as also provided by § 157(c)(1), and appointment of bankruptcy judges by the courts, 28 U.S.C. § 106, § 152 (1984).

> ⋅ ⋅ ⋅ ⋅ ⋅

> Put in place to cure the deficiencies found by Justice Brennan in writing for the *Marathon* plurality, these controls and the vesting of the jurisdiction in the district courts enable bankruptcy courts to serve as adjuncts assisting the district courts. The bankruptcy courts are no longer independently created bodies that exercise their own jurisdiction and whose members are appointed through the political process.

> This change in status greatly enhances, in light of *Marathon,* the validity of enabling adjunct bankruptcy courts to determine state law causes of action. The controls, particularly control over the reference, are nearly tantamount to retention of justiciability in Article III courts.

46 B.R. at 858–59.

These controls established by the statutory scheme retain power over related proceedings in the district courts, and by implication, indicate a Congressional intent that bankruptcy judges be empowered to hear a broad range of matters subject to these controls. "Congress wisely chose a broad jurisdictional grant and a broad abstention doctrine over a narrower jurisdictional grant so that the district court could determine in each individual case whether hearing it would promote or impair efficient

and fair adjudication of bankruptcy cases." *In re Salem,* 783 F.2d at 635 (citation omitted).

The legislative history to the 1984 Act indicates that this broad jurisdictional grant was not perceived to be without constitutional difficulties by its opponents. However, in discussing these difficulties, Senator Hatch explicitly stated that "[a]ncillary jurisdiciton [*sic* ] questions are unrelated to this issue. Federal courts certainly retain authority to adjudicate a State claim arising out of the same facts giving rise to the Federal claim." Statement of Sen. Orrin Hatch, June 29, 1984, *reprinted in* 1984 U.S. Code Cong. & Ad. News 590, 595.

Pendent and ancillary jurisdiction are doctrines which are not created by statute but are powers of incidental jurisdiction which all federal courts possess. The jurisdiction exercised by the bankruptcy court is that granted to the district court in § 1334, which was referred to the bankruptcy court by the district court's Order of Reference. The rationale for exercising pendent and ancillary jurisdiction exists in "related to" matters to the same degree as in other cases for which the district court has jurisdiction. That the district court has been authorized to delegate some aspects of *its* jurisdiction to the bankruptcy court under § 157 is an inconsequential distinction. The bankruptcy court, in asserting pendent and ancillary jurisdiction, is merely exercising the district court's powers of incidental jurisdiction, which have been delegated to the bankruptcy court.

Courts which have considered the power of the bankruptcy courts to exercise pendent and ancillary jurisdiction have consistently concluded that these powers of incidental jurisdiction are possessed by the bankruptcy courts as well as by the district courts. *See In re Environmental Research & Development, Inc.,* 46 B.R. 774 (S.D.N.Y.1985); *In re John Peterson Motors, Inc., supra; In re Earl Roggenbuck Farms, Inc.,* 51 B.R. 913, 925–26 (Bankr. E.D.Mich.1985); *In re Wood,* 52 B.R. 513 (Bankr.N.D.Ala.1985).

As noted by the district court in *In re WWG Industries, Inc.,* 44 B.R. 287 (N.D. Ga.1984):

[T]he concept of ancillary jurisdiction is the only constitutional basis on which to explain Congress's grant of subject matter jurisdiction to this court, in ... 28 U.S.C. § 1334(c)(2), over certain non-diverse actions based purely on state law claims. Section 1334(c)(2) states: 'Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.'

44 B.R. at 290.

In addition, the fact that the mandatory abstention provision does not apply to cases already pending, *see* 1984 Act, § 122(b), 98 Stat. at 346, suggests that Congress contemplated the exercise of pendent and ancillary jurisdiction by the district courts over proceedings based upon state law. "The import of this section is that Congress is asking the district courts, in certain situations, to hear purely state law questions that do not involve diversity of citizenship or a federal question." *In re WWG Industries, Inc.,* 44 B.R. at 290.

Thus, there is no support for defendant's argument that the bankruptcy courts are without the power to exercise pendent and ancillary jurisdiction. The relevant issue in this case is whether the court has the power to exercise pendent jurisdiction over another party than that against whom the federal claim has been asserted, or so called pendent party jurisdiction. The Court notes at the outset that diversity of citizenship exists between plaintiff and *all* defendants, including the remaining defendant, and that diversity was the original basis for jurisdiction in the district court in

Pennsylvania. However, diversity does not presently serve as a jurisdictional basis under § 1334. The Court must determine whether the doctrine of pendent jurisdiction confers jurisdiction over defendants as to whom no independent basis of federal jurisdiction exists under 28 U.S.C. § 1334.

Pendent jurisdiction exists when a substantial federal claim and a state claim "derive from a common nucleus of operative facts" and constitute "but one constitutional 'case'." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Pendent party jurisdiction typically involves not only a state claim which is appended to the main federal claim, but also requires for its resolution the joinder of an additional party over whom there is no independent basis of federal jurisdiction. *Ayala v. United States,* 550 F.2d 1196, 1198 (9th Cir.1977). In *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court addressed the question whether " 'pendent' federal jurisdiction encompasses not merely the litigation of additional *claims* between parties with respect to whom there is federal jurisdiction, but also the joining of additional *parties* with respect to whom there is no independent basis of federal jurisdiction." 427 U.S. at 6, 96 S.Ct. at 2416.

The plaintiff in *Aldinger,* a suspended county employee, brought suit in federal court alleging that the defendant county official who had fired her had violated her constitutional rights in contravention of 42 U.S.C. § 1983. The plaintiff attempted to join a state claim against the county, which was previously not a party to the suit. The Court held that pendent party jurisdiction is unavailable to a party who joins a state law claim against a county to his federal claim, when federal jurisdiction is based on 28 U.S.C. § 1343(a)(3). 427 U.S. at 19, 96 S.Ct. at 2422–23.

The Court viewed the addition of a completely new party as contrary to the well established principle that federal courts are courts of limited jurisdiction marked out by Congress. 427 U.S. at 15, 96 S.Ct. at 2420–

21. The Court considered it necessary to decide the question of whether a state law claim against a new third party could be pended to petitioner's federal claim in the context of whether, by virtue of the statutory grant of subject matter jurisdiction upon which petitioner's main claim against the defendant rested, Congress had addressed itself to the *party* as to whom jurisdiction pendent to the principal claim was sought. 427 U.S. at 16, 96 S.Ct. at 2421.

The jurisdictional grant in that case was contained in § 1343, which granted the courts "original jurisdiction of any civil action authorized by law to be commenced by any person ...." The civil rights action set out in § 1983 was included within the jurisdictional grant of § 1343, however parties such as counties (the third-party defendant there) were expressly excluded by Congress from liability in § 1983. Therefore the scope of the "civil action" over which the district courts had been given statutory jurisdiction in § 1343 was not broad enough to bring back within the jurisdictional power parties expressly excluded by § 1983. The Court noted that "[t]he reach of the statute conferring jurisdiction should be construed in light of the scope of the cause of action as to which federal jurisdictional power *has* been extended by Congress." 427 U.S. at 17, 96 S.Ct. at 2421.

The Court emphasized that it was deciding the pendent party jurisdiction issue with respect only to a claim brought under § 1343(a)(3) and § 1983:

Other statutory grants and other alignments of parties and claims might call for a different result. When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in federal court may all the claims be tried together ... [T]he question of pendent-party jurisdiction is "subtle and complex," and we believe that it would be as unwise as it would be unnec-

essary to lay down any sweeping pronouncement upon the existence or exercise of such jurisdiction ... If the new party sought to be joined is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state law claim. Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

427 U.S. at 18, 96 S.Ct. at 2422.

The Supreme Court further defined the scope of incidental jurisdiction in *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The plaintiff in that case, who was in federal court on diversity grounds, asserted a claim under Fed.R.Civ.P. 14 against a third-party defendant. The Court held that for a plaintiff to assert such a claim, the secondary claim must be based on independent jurisdictional grounds; ancillary jurisdiction would not operate to waive jurisdictional requirements.

The Court reiterated that the power to adjudicate exists when a substantial federal claim and a state claim "derive from a common nucleus of operative facts" and constitute "but one constitutional 'case'." 437 U.S. at 371, 98 S.Ct. at 2401 (*quoting UMW v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1135, 16 L.Ed.2d 218). However, the Court emphasized that securing constitutional power was "merely the first hurdle that must be overcome in determining whether a federal court has jurisdiction over a particular controversy." 437 U.S. at 372, 98 S.Ct. at 2401. In addition, the federal jurisdiction must not be limited by the statute on which jurisdiction is based. The Court noted that

there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim in order to determine whether

'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim.

437 U.S. at 373, 98 S.Ct. at 2402 (*quoting from Aldinger v. Howard,* 427 U.S. at 18, 96 S.Ct. at 2422).

The Court held that the relevant statute in the case, 28 U.S.C. § 1332(a)(1), had consistently been held to require complete diversity of citizenship. The plaintiff could not have brought suit in federal court naming the original defendant and the third party defendant as co-defendants, since citizens of the same state would have been on both sides of the litigation. The Court therefore found that the statute negated the exercise of ancillary jurisdiction.

The final step of the approach developed in *Kroger,* the "context" test, involves, first, an examination of whether the secondary claim has a "logical dependence" upon the chief controversy. 437 U.S. at 376, 98 S.Ct. at 2404. Only when this test is satisfied does the secondary assertion become "an ancillary and dependent claim" rather than a "new and independent one."

Second, the court must determine whether the posture of the party seeking to invoke ancillary jurisdiction is acceptable in light of the policies underlying the doctrine's application. The Court stated that "ancillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court. A plaintiff cannot complain if ancillary jurisdiction does not encompass all of his possible claims ... since it is he who has chosen the federal rather than the state forum and must thus accept its limitations." 437 U.S. at 376, 98 S.Ct. at 2404.

In contrast to the statutory grants of jurisdiction at issue in *Aldinger* and *Kroger,* the jurisdictional grant in the case at bar does not expressly or impliedly negate the exercise of incidental jurisdiction over actions which are not delineated within § 1334. As noted previously, Congress in-

tended that the bankruptcy court have broad jurisdiction to adjudicate the rights of creditors and to administer the estate expeditiously. Although a statutory grant of exclusive federal jurisdiction bolsters the arguments favoring pendent or ancillary jurisdiction 'since only in federal court may all of the claims be tried together,' *Aldinger v. Howard,* 427 U.S. at 18, 96 S.Ct. at 2422, the converse argument, that a grant of concurrent jurisdiction in some manner 'expressly or by implication' precludes such jurisdiction, does not follow. *Potter v. Rain Brook Feed Co., Inc.,* 530 F.Supp. 569, 579 (E.D.Cal.1982). The grant of concurrent jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11 in § 1334(b), does not indicate an intent to preclude the exercise of pendent jurisdiction over causes of action related to these types of proceedings but not related to the debtor's estate.

■ In addition, the context in which the claims against Lakehead have been asserted favors the discretionary exercise of pendent party jurisdiction. Plaintiff originally chose to bring this action in federal district court on diversity grounds, which would have served as an independent basis of federal jurisdiction over the defendant Lakehead. The jurisdictional basis changed to 28 U.S.C. § 1334 when the action was removed by defendants Coral, United, and Kiantone, to the bankruptcy court. Since plaintiff has not chosen the bankruptcy court forum, the concerns of fairness to litigants, avoidance of piecemeal litigation and justice to the party which has been "haled into court", which favor the exercise of ancillary jurisdiction by defendants, support the exercise of pendent jurisdiction in this case over plaintiff's claims against Lakehead. Plaintiff did not choose to bring this action in the bankruptcy court and should not be forced to duplicate its efforts in subsequent litigation, or risk the possibility of its claim being time-barred, by having its remaining claim dismissed by this Court. Independent grounds for federal jurisdiction (diversity) exist in this case and had not the *defendants* removed the

case to the bankruptcy court, the plaintiff could clearly have added Lakehead as a defendant to the pending district court action. Furthermore, the concerns expressed by the Supreme Court which serve to limit the exercise of pendent jurisdiction over state law claims, which are to preserve federal courts as courts of limited jurisdiction, are not present here since there is an independent basis for federal jurisdiction over plaintiff's claims against Lakehead.

The Court therefore concludes that pendent party jurisdiction is not precluded by *Aldinger* and *Kroger*. The remaining inquiry is whether the claims against Lakehead meet the *Gibbs* test of constitutional power and discretion.

Under the Supreme Court standard enunciated in *Gibbs,* pendent jurisdiction may be exercised if a two-part, power-discretion test is satisfied. Federal power to hear a case exists when a substantial federal claim and a state claim "derive from a common nucleus of operative facts" and constitute "but one constitutional 'case'". 383 U.S. at 725, 86 S.Ct. at 1138. Once a court is satisfied that it has the power to adjudicate the claim, it must then decide whether it "ought" to do so, since "pendent jurisdiction is a doctrine of discretion, not plaintiff's right". 383 U.S. at 726, 86 S.Ct. at 1139. The justification for exercise of federal discretion is determined by considerations of "judicial economy, convenience, and fairness to litigants." 383 U.S. at 726, 86 S.Ct. at 1139. The *Gibbs* Court emphasized that a federal court should employ pendent jurisdiction only when both parts of this power-discretion test are satisfied, and "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." 383 U.S. at 726, 86 S.Ct. at 1139.

■ Issues of bankruptcy are federal questions. *See* U.S. Const. Art I, § 8 cl. 4 (granting to Congress the power to "establish ... uniform Laws on the subject of Bankruptcies throughout the United States"). Thus, "federal court adjudication of disputes arising pursuant to bankruptcy

... is conventional federal-question jurisdiction." *In re Environmental Research & Development*, 46 B.R. at 778, *quoting National Mutual Insurance Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 611, 69 S.Ct. 1173, 1187–88, 93 L.Ed. 1556 (1949) (Rutledge, J., concurring). Therefore the plaintiff's claim against the debtor is a substantial federal claim, to which a state claim may be appended if both claims "derive from the same nucleus of operative facts."

The *Gibbs* "same nucleus of operative facts" test is not a tightly defined standard but calls for a degree of discretion in its application. The Court concludes that the *Gibbs* "power" test is satisfied in this instance because the claims against defendants are all based on allegations relating to the delivery of the oil and the stop delivery order, and require a determination of the various parties' rights under the Uniform Commercial Code. The claims would be expected to be tried in one proceeding, and constitute one case.

It would be unfair to dismiss this action after it was properly brought in the district court, after substantial discovery has taken place, and when dismissal might result in the claim being time-barred. Plaintiff should not be precluded from federal court when diversity exists. The Court therefore concludes that pendent jurisdiction should be exercised over plaintiff's claim against Lakehead. Defendant's motion to dismiss for lack of jurisdiction is denied.

However, the Court considers it appropriate for the district court rather than the bankruptcy court to adjudicate this action. Since the claims against all other defendants have been settled, the interest of judicial economy is no longer present. The present action is solely between two non-debtor parties, and the outcome would not affect property of the estate. There is no purpose served by retaining this action in the bankruptcy court.

This court therefore recommends that the district court for the Southern District of Texas withdraw its reference of this proceeding to the bankruptcy court. Since the venue was transferred from the Western District of Pennsylvania to the Southern District of Texas, it seems logical for the case to be withdrawn to the district court for the Southern District of Texas rather than remanded back to the Pennsylvania district court in which it originated. The Court presumes, however, that the case was transferred to the Houston Bankruptcy Court primarily because the Coral bankruptcy case and related litigation were pending in this Court. The settlement of the claims against the debtor and the other defendants may render those considerations which prompted the change in venue unimportant. However, local counsel is presently involved in the case, and other factors may determine the Southern District of Texas to be the most convenient and appropriate venue for this action. The Court chooses not to rule on the question of proper venue, but leaves that issue for decision, after a consideration of the relevant factors involved in the present posture of the case, by the district court for the Southern District of Texas.