**In re PETROLIA CORPORATION, Debtor.**

**PETROLIA CORPORATION, a Michigan corporation, Wicklund Petroleum Corporation, a Delaware corporation, and Willard D. Wicklund, an individual, Plaintiffs,**

v.

**Theodore M. ELAM, an individual, and McAfee & Taft, P.C., an Oklahoma professional corporation, Defendants.**

Bankruptcy Nos. 85–02349–R, 86–0264–R.

United States Bankruptcy Court, E.D. Michigan, S.D.

Nov. 6, 1987.

Julie Fershtman, Detroit, Mich., for plaintiffs.

Richard Wilhelm, Detroit, Mich., for defendants.

## MEMORANDUM OPINION DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

STEVEN W. RHODES, Bankruptcy Judge.

The defendants filed a motion to dismiss plaintiffs Wicklund Petroleum Corporation and Willard Wicklund for lack of jurisdiction. For the reasons stated below, the Court concludes that the motion should be denied.

The defendants have not consented to the jurisdiction of the bankruptcy court to hear this non-core proceeding. Therefore, pursuant to 28 U.S.C. § 157(c)(1), this Court lacks authority to enter a final order such as an order granting a motion to dismiss; however, this Court does have the authority to enter an order denying a motion to dismiss, because such an order is not a final order. Accordingly, the following constitutes this Court's memorandum opinion denying the motion to dismiss for lack of jurisdiction.

### I. *Findings of Fact*

1. One of the plaintiffs, Petrolia Corporation, is the debtor in this Chapter 11 reorganization. Petrolia, a closely held Michigan corporation, was engaged in the oil and gas business.

2. Another plaintiff, Willard Wicklund, was the sole shareholder, president, and a director of Petrolia. Wicklund was also a principal shareholder, director, and chairman of the board of Wicklund Petroleum Corporation.

3. Plaintiff Wicklund Petroleum Corporation (WPC), was a publicly held Delaware corporation engaged in the oil and gas business.

4. A merger was planned for WPC and Petrolia.

5. Defendant McAfee & Taft, P.C. is a law firm; it performed some of the legal work for the planned merger. The parties dispute the extent of McAfee & Taft's involvement and who was McAfee & Taft's client.

6. Defendant Theodore M. Elam is a shareholder and attorney in the law firm of McAfee & Taft, P.C.

7. The defendants drafted a proxy statement for presentation to the WPC shareholders recommending the merger. In drafting this proxy statement, the defendants gathered information from WPC, Wicklund, Wicklund's accountants, Wicklund's financial advisor and investment banker, and Douglas Wicklund.

8. WPC and Petrolia approved the proxy statement and issued it May 14, 1984. It was also filed with the Securities Exchange Commission.

9. The proxy statement announced a shareholder vote to approve the merger to be held on June 15, 1984 at the annual meeting of WPC shareholders. The proxy statement also advised WPC shareholders of dissenting shareholders' appraisal rights under Delaware law. The plaintiffs allege that this statement concerning dissenting shareholders' rights under Delaware law was incorrect. The plaintiffs also allege that the proxy statement omitted required financial information.

10. On May 25, 1984, Sumner H. Woodrow, a minority WPC shareholder, filed suit to enjoin the merger on the basis of errors and misstatements in the proxy statement. The parties dispute the basis for Woodrow's suit.

11. The defendants advised the plaintiffs to settle Woodrow's suit and call off the merger.

12. On June 15, 1984, the plaintiffs determined that the defendants would no longer represent them.

13. Another firm, Skadden, Arps, Slate, Meagher & Flom, was retained. On August 22, 1984, the plaintiffs entered a settlement of Woodrow's suit which foreclosed this merger and required advance notice to Woodrow of any future attempts at merger. Petrolia paid WPC $40,000 in its costs for the merger, and WPC paid Woodrow $54,000 in legal costs.

14. In March of 1985, Petrolia's creditors filed this involuntary bankruptcy proceeding in Oklahoma.

15. In June of 1985, the venue of the Chapter 11 proceeding was transferred to the Eastern District of Michigan as a more convenient forum.

16. On March 10, 1986, the plaintiffs filed this adversary proceeding, claiming that the failure of the merger caused its financial problems, precipitating the involuntary bankruptcy.

17. In Count I of their amended complaint, filed May 20, 1986, the plaintiffs allege that the defendants violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), violated Rule 14a–9(a) of the Securities and Exchange Commission, SFR § 240.14a–9, and aided and abetted a violation of the federal securities law.

18. Counts II through IV of the plaintiffs' first amended complaint allege professional malpractice, negligence, breach of the Code of Professional Responsibility, breach of contract and unjust enrichment. In their motion to dismiss for lack of jurisdiction, the defendants contend that the claims of the nondebtor plaintiffs (WPC and Wicklund) are not related to Petrolia's bankruptcy and therefore beyond the jurisdiction of this Court.

## II. *Conclusions of Law*

1. *The test for determining "related to" jurisdiction under 28 U.S.C. § 1334(b) is whether the outcome of the proceeding will have any effect on the bankruptcy estate.*

■ Section 1334(b) provides:
Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

In *In re Salem Mortgage Company (Kelley v. Nodine)*, 783 F.2d 626 (6th Cir. 1986), the United States Court of Appeals for the Sixth Circuit defined the scope of "related to" jurisdiction in terms of the proceeding's effect upon the bankruptcy estate.

Courts have developed different tests in determining whether subject matter jurisdiction exists in a proceeding claimed to be "related to" a particular bankruptcy case. Some courts would find jurisdiction "only where the action clearly involved property of the estate ... or where a determination of the controversy is required for the proper administration or reorganization of the estate...." *In re General Oil Distributors, Inc.*, 21 B.R. 888, 892 n. 13 (Bankr. E.D.N.Y.1982) (citations omitted). Another test finds jurisdiction "whenever 'the outcome of the proceeding could conceivably have *any effect upon the estate being administered in bankruptcy*'" *Id.* (citing *Mazur v. U.S. Air Duct Corp.*, 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981) (emphasis in original)). Although situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement, we believe that a broader interpretation of the statute more closely reflects the congressional intent in adopting the new bankruptcy laws.

783 F.2d at 634. *See also In re Southern Industrial Banking Corporation (DuVoisin v. Foster)*, 809 F.2d 329 (6th Cir.1987); *In re Maislin Industries, U.S., Inc. (Maislin Industries, U.S., Inc. v. Certified Brokerage Sys., Inc.)*, 75 B.R. 170 (Bankr.E.D. Mich.1987).

2. *The claims of WPC and Wicklund are not "related to" the Petrolia bankruptcy case.*

■ Applying this test to the claims of the two non-debtor plaintiffs, the Court

concludes that the outcomes of these claims would have no effect on the Petrolia bankruptcy estate. There is nothing in the record indicating any connection between the debtor and the two non-debtor plaintiffs which would cause recovery by the non-debtor plaintiffs to affect the bankruptcy estate. Compare: *In the Matter of McRae Fire Protection, Inc.,* 49 B.R. 773 (Bankr.E.D.Mich.1985); *In re Earl Roggenbuck Farms, Inc. (Cook v. United States)*, 51 B.R. 913 (Bankr.E.D.Mich.1985). *See Wayne Film Recovery Systems,* 64 B.R. 45 (N.D.Ill.1986). Thus, this Court has no "related to" jurisdiction over the claims of Wicklund or WPC.

3. *Subject to statutory limitations, the federal district court may exercise jurisdiction over a claim ancillary to a claim over which it has jurisdiction.*

■ In determining whether there is ancillary jurisdiction over the claims of WPC and Wicklund, "[t]he proper focus in determining the jurisdictional issue is on the district court because the bankruptcy court is a unit of the district court. 28 U.S.C. § 151." *In re Coral Petroleum, Inc.,* 62 B.R. 699, 702 (Bankr.S.D.Tex.1986).

■ Federal courts have ancillary jurisdiction to hear nonfederal claims in order to effectively resolve an entire, logically entwined lawsuit. *See, e.g., Owen Equipment & Erection Company v. Kroger,* 437 U.S. 365, 377, 98 S.Ct. 2396, 2404, 57 L.Ed. 2d 274 (1978).

The term *ancillary jurisdiction*, in fully flowered form, then, is used to consider the court's jurisdiction over claims which are an outgrowth of the claims by the original plaintiff or plaintiffs against the original defendant or defendants. These would include compulsory counterclaims, cross-claims, third-party claims, claims against an additional party as part of one of the above, and intervention as of right.

J. Landers & James A. Martin, *Civil Procedure* 214 (1981).[1]

**1.** The parties here have argued "pendent party jurisdiction," a term used in some of the cases. *See, e.g., First Alabama Bank of Montgomery v.*

The contours of ancillary jurisdiction were defined by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), then further limited by *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1975), and *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). *Owen Equipment,* 437 U.S. at 371–373, 98 S.Ct. at 2401–2402.

*Gibbs* involved pendent jurisdiction, but it delineated the constitutional limits of the federal judicial power to hear state law claims when independent bases for federal jurisdiction are not present.

The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole. [Emphasis in original.]

383 U.S. at 725, 86 S.Ct. at 1138.

However, *Aldinger* and *Zahn* noted that this federal judicial power may be limited by statute.

The *Aldinger,* and *Zahn,* cases thus make clear that a finding that federal and nonfederal claims arise from a 'common nucleus of operative fact,' the test of *Gibbs*, does not end the inquiry into whether a federal court has power to hear the non-federal claims along with the federal ones. Beyond this constitutional minimum, there must be an examination of the posture in which the non-federal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular non-federal claim.

*Owen Equipment,* 437 U.S. at 373, 98 S.Ct. at 2402, *citing Aldinger,* 427 U.S. at 18, 96 S.Ct. at 2422.

*Parsons Steel Inc.,* 747 F.2d 1367, 1377 (11th Cir.1984).

4. *The claims of WPC and Wicklund arise from the same factual aggregate as the debtor's claims.*

■ As the defendants admit, many of the factual issues resulting from the plaintiffs' claims are identical. All three plaintiffs allege professional malpractice, negligence, breach of the Code of Professional Responsibility, breach of contract and unjust enrichment arising from the defendants' representation in preparation for the proposed merger of the debtor and WPC. Certainly these claims "derive from a common nucleus of operative fact." Moreover, these claims could be permissively joined under Rule 20 of the Federal Rules of Civil Procedure, which is designed to permit the resolution of all related disputes in one action. Thus, these claims are such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138.

Accordingly, the Court concludes that the first part of the test for application of ancillary jurisdiction is therefore met.

5. *The bankruptcy laws do not impliedly negate federal jurisdiction to hear a state law claim ancillary to a claim related to a bankruptcy case.*

■ As noted above, the second part of the test for ancillary jurisdiction is whether Congress has expressly or impliedly limited the federal court's jurisdiction over non-federal claims. 28 U.S.C. § 1334 provides in pertinent part:

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

The Court concludes that this statute does not limit the federal courts' ancillary jurisdiction in bankruptcy cases.

The Supreme Court found statutory limitations on ancillary or pendent jurisdiction in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), and in *Zahn v. International Paper Company*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). In *Owen Equipment* and *Zahn*, the court construed the scope of ancillary and pendent jurisdiction under 28 U.S.C. § 1332(a), the statute conferring jurisdiction on the federal courts in diversity cases. In both cases, the court interpreted congressional intent in the face of long-standing strict construction of Section 1332.

Over the years Congress has repeatedly reenacted or amended the statute conferring diversity jurisdiction, leaving intact this rule of complete diversity. Whatever may have been the original purposes of diversity of citizenship jurisdiction, this subsequent history clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same state as any defendant. [Citations omitted.]

*Owen Equipment,* 437 U.S. at 373–74, 98 S.Ct. at 2402. *See also Zahn,* 414 U.S. at 301, 94 S.Ct. at 512.

However, no such history suggests that this reasoning is applicable to the recently enacted jurisdictional grant in bankruptcy, 28 U.S.C. § 1334.

In *Aldinger,* the court interpreted the scope of the jurisdictional grant of 28 U.S.C. § 1343(3) together with the scope of 42 U.S.C. § 1983, delimiting a civil rights act cause of action:

> The question here, ... is whether by virtue of the statutory grant of subject-matter jurisdiction, upon which petitioner's principle claim against the treasurer rests, Congress has addressed itself to the *party* as to whom jurisdiction pendent to the principle claim is sought. And it undoubtedly has done so.
>
> ... In short, as against a plaintiff's claim of *additional* power over a 'pendent party,' the reach of the statute conferring jurisdiction should be construed in light of the scope of the cause of action as to which federal judicial power *has* been extended by Congress. [Emphasis in original.]

The court found that "[r]esolution of a claim of pendent party jurisdiction, therefore, calls for careful attention to the relevant statutory language." *Aldinger,* 427 U.S. at 17, 96 S.Ct. at 2421. Accordingly, the court concluded that the federal courts lacked jurisdiction under Section 1343 to hear state-law claims against the non-federal defendant, Spokane County. The court reasoned that Congress explicitly excluded municipal corporations from liability under Section 1983. Therefore, reading Section 1983 and Section 1343 together, the court determined that Congress, by implication, did not extend to the district courts jurisdiction "for purposes of asserting a state-law claim not within federal diversity jurisdiction." *Id.*

In *Aldinger,* the court recognized that ancillary jurisdiction would vary under different statutes.

> There are, of course, many variations in the language which Congress has employed to confer jurisdiction upon the

federal courts. Now we decide here only the issue of so-called 'pendent party' jurisdiction with respect to a claim brought under Sections 1343(3) and 1983. Other statutory grants and other alignments of parties and claims might call for a different result.... As we indicated at the outset of this opinion, the question of pendent-party jurisdiction is 'subtle and complex,' and we believe that it would be as unwise as it would be unnecessary to lay down any sweeping pronouncement upon the existence or exercise of such jurisdiction. Two observations suffice for the disposition of the type of case before us. If the new party sought to be joined is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim. Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

*Id.* at 18, 96 S.Ct. at 2422.

Upon reviewing the language of the bankruptcy jurisdiction statutes, their legislative history, and the subsequent case law interpreting them, the Court concludes that there is no such limitation on ancillary jurisdiction in bankruptcy as was found in *Aldinger, Zahn,* and *Owen Equipment.*

In *In re Coral Petroleum, Inc.,* 62 B.R. 699, 706–707 (Bankr.S.D.Tex.1986), the court held:

> In contrast to the statutory grants of jurisdiction at issue in *Aldinger* and *Kroger,* the jurisdictional grant in the case at bar does not expressly or impliedly negate the exercise of incidental jurisdiction over actions which are not delineated within Section 1334. As noted previously, Congress intended that the bankruptcy court have broad jurisdiction to adjudicate the rights of creditors and to administer the estate expeditiously. Although a statutory grant of exclusive federal jurisdiction bolsters the arguments fa-

voring pendent or ancillary jurisdiction 'since only in federal court may all of the claims be tried together,' the converse argument, that a grant of concurrent jurisdiction in some manner 'expressly or by implication' precludes such jurisdiction, does not follow. The grant of concurrent jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11 in section 1334(b), does not indicate an intent to preclude the exercise of pendent jurisdiction over causes of action related to these types of proceedings but not related to the debtor's estate. [Citations omitted.]

*See also Melamed v. Lake County National Bank,* 727 F.2d 1399, 1403 (6th Cir. 1984) (rejecting the argument that pendent jurisdiction is narrower in actions under the former Bankruptcy Act than in other federal question cases).

The defendants note that subsection (c) of Section 1334 expressly provides for the right of the district court to abstain from hearing purely state law claims and mandates abstention in certain circumstances where the court would not otherwise have jurisdiction over the claim. The defendants argue that this section impliedly negates ancillary jurisdiction over purely state law claims of pendent parties, because those claims could not have been brought in federal court if the debtor had not filed bankruptcy.

The Court concludes that this argument must be rejected because by definition, these abstention provisions are not a limitation on jurisdiction.

In *In re WWG Industries, Inc. (Chemical Bank v. Grisby's World of Carpet, Inc.),* 44 B.R. 287, 290 (N.D.Ga.1984), the court rejected a similar argument. That court interpreted Section 1334(c)(2) as nonjurisdictional, noting that it leaves federal courts the discretion to hear certain state-law claims. "The import of the section is that Congress is asking the district courts, in certain situations, to hear purely state-law questions that do not involve diversity of citizenship or a federal question." 44 B.R. at 290.

Finally, *In re Salem Mortgage Co. (Kelley v. Nodine),* 783 F.2d 626, 633–635 (6th Cir.1986), the court noted:

The emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinarily broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases.

. . . .

We note that this jurisdictional grant was simultaneously qualified by the abstention provision of 28 U.S.C. § 1471(d) ... now 28 U.S.C. § 1334(c),.... Although section 1334(c)(2) does not apply to pending cases, ... the limitations in section 1334(c)(1) are sufficient to keep federal jurisdiction from becoming overextended.... Congress wisely chose a broad jurisdictional grant and a broad abstention doctrine over a narrower jurisdictional grant so that the district court could determine in each individual case whether hearing it would promote or impair sufficient and fair adjudication of bankruptcy cases.

Accordingly, it must be held that Congress clearly chose to separate abstention from jurisdiction. Therefore, the federal district court has ancillary jurisdiction over WPC's and Wicklund's claims.

6. *The Bankruptcy Court may hear claims over which there is ancillary jurisdiction where, as here, they are referred by the District Court.*

■ Under 28 U.S.C. § 157(c), a bankruptcy judge may hear a proceeding which is related to a case under Title 11 on reference from the district court. District Court Local Rule 33 refers these proceedings to the bankruptcy court.

Thus, the debtor's claim against these defendants is specifically referred to the bankruptcy court for entry of proposed findings of fact and conclusions of law. Thus, the question is whether the ancillary claims of WPC and Wicklund are referred along with the debtor's claim.

The nature of ancillary jurisdiction is that the ancillary claims, over which there

would not otherwise be jurisdiction, are heard with the "main" claim. Ancillary jurisdiction is an "outgrowth" of a court's jurisdiction over the main claim. The bankruptcy court, as an adjunct of the district court, must have jurisdiction to hear a claim ancillary to one properly before it. District Court Local Rule 33(a)(1) construes the reference to the bankruptcy court broadly: "It is the intention of this Court that the Bankruptcy Judges be given the broadest possible authority to administer cases properly within their jurisdiction and this rule shall be interpreted to achieve this end." Local Rule 33(a)(1), Eastern District of Michigan.

This question was previously addressed in dicta in *In re Earl Roggenbuck Farms, Inc. (Cook v. United States)*, 51 B.R. 913, 925–926 (Bankr.E.D.Mich.1985):

> Roggenbuck also argued that if the Court did not dismiss the case it would be exercising ancillary jurisdiction, a power that district courts, but not bankruptcy courts, possess. No support for or against this proposition was offered. We believe, however, that for two reasons, this argument is unsound. Assuming for the moment that ancillary jurisdiction is involved, the district court for the Eastern District of Michigan referred all of its jurisdiction but for that which it explicitly withheld and that which it may not constitutionally delegate, to the bankruptcy court in its July 23, 1984 order of reference (Administrative Order # 84X00084). Since the district court has not expressly withheld ancillary federal jurisdiction from the bankruptcy court, the only reason we might not exercise such jurisdiction must be of constitutional dimension. Ancillary jurisdiction has been described as follows:

> > When a federal court has jurisdiction over the main cause of action, it also has jurisdiction over any proceeding ancillary to that action, regardless of the amount of money involved, the citizenship of the parties, or the existence of a federal question in the ancillary suit. By virtue of this principle, the district court exercises jurisdiction over many proceedings as ancillary,

even though there would be no federal jurisdiction if these proceedings were originally and independently litigated. . . .

> > 1 *Morris Federal Practice* ¶ 0.90[3], p. 828.1–830 (2d ed. 1948) (Emphasis added).

> In our opinion, 28 U.S.C. § 157(c) is, in effect, a statutory grant of ancillary jurisdiction.

*See also In re Coral Petroleum, Inc.*, 62 B.R. at 703:

> Lakehead contends that the power to exercise ancillary or pendent jurisdiction is possessed by the district courts, but not the bankruptcy courts. . . . According to Lakehead, Congress intended to limit the bankruptcy court's power to adjudicate state-law claims in enacting 28 U.S.C. § 1334, and, for that reason, the bankruptcy court cannot exercise pendent or ancillary jurisdiction over state-law claims.

> This argument is not supported by either the legislative history to the 1984 Amendments or the subsequent case law interpreting the jurisdictional grant in Section 1334.

Accordingly, the Court concludes the District Court has properly referred this claim to the Bankruptcy Court.

7. *Ancillary jurisdiction should be exercised with discretion.*

The Supreme Court held in *Gibbs:*

> That power [to hear ancillary claims] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. . . . Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, then state claims may be dis-

missed without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong. [Citations omitted.]

*United Mine Workers v. Gibbs,* 383 U.S. 715, 726–727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

*Aldinger* similarly instructs the court to consider the "posture" in which the ancillary claim is asserted. 427 U.S. at 18, 96 S.Ct. at 2422. *See also Owen Equipment & Erection Company v. Kroger,* 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978).

8. *Considerations of judicial economy, convenience and fairness to litigants favor the exercise of ancillary jurisdiction over the claims of WPC and Wicklund.*

▇ The Court finds that interests of judicial economy demand that the three plaintiffs' claims be heard together on the merits as expeditiously as possible. There is no indication on the record that state court litigation has commenced. While it is true that the claims of all three plaintiffs could be heard together in state court, it is unlikely that this could be done expeditiously. Compare *Aldinger,* 427 U.S. at 15, 96 S.Ct. at 2420–2421, citing *Kenrose Manufacturing Company v. Fred Whitaker Company,* 512 F.2d 890, 894 (4th Cir.1972), "the efficiency plaintiff seeks so avidly is available without question in the state courts." The adversary complaint in this case was filed in the bankruptcy court on March 10, 1986, and defendants have yet to file an answer. After an extended period of procedural maneuvering,[2] the parties appear ready to proceed with discovery. The Court concludes that the parties will receive a hearing on the merits sooner in this court, than if the claims were dismissed and then commenced again in state court.

*See In re DeLorean Motor Co. (Allard v. Benjamin),* 49 B.R. 900, 911 (Bankr.E.D. Mich.1985).

For essentially the same reasons, the Court concludes that the interest of convenience favors the exercise of ancillary jurisdiction.

The exercise of ancillary jurisdiction in this case requires the defendants to defend against nearly identical claims of three plaintiffs arising from the same facts. The exercise of ancillary jurisdiction thus requires the defendants to defend themselves in one trial, rather than two or three duplicative trials. Somewhat surprisingly, it is the defendants who object to ancillary jurisdiction. The exercise of ancillary jurisdiction in this case brings into this Court parties who would otherwise not be here, but who voluntarily come into the court. This fact distinguishes *Aldinger:*

> From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of jurisdiction. But it is quite another thing to permit a *plaintiff,* who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different *defendant* on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant 'derived from a common nucleus of operative fact.' [Emphasis supplied.]

*Aldinger,* 427 U.S. at 14, 96 S.Ct. at 2420.

Several courts have, considering *Aldinger,* exercised ancillary jurisdiction to allow additional plaintiffs in the litigation. *See, e.g., Weinberger v. Kendrick,* 698 F.2d 61, 77 (2d Cir.1982) (permitting additional plaintiffs to litigate state claims against

---

**2.** Plaintiffs filed a first amended complaint May 13, 1986, adding WPC and Wicklund as plaintiffs. Defendant has filed a motion for withdrawal of the reference to the bankruptcy court, a motion to dismiss for lack of personal juris-

diction or in the alternative, for transfer of venue, and this motion to dismiss Count I of the complaint and to dismiss the two non-debtor plaintiffs.

the principle lenders of a debtor in bankruptcy, when such defendants were already in federal court defending a class action suit); *In re Coral Petroleum, Inc.*, 62 B.R. 699, 707 (Bankr.S.D.Tex.1986) (finding pendent jurisdiction over state-law claims in a proceeding not "related to" the case under Title 11, against a defendant originally sued in district court with diversity jurisdiction, when the defendant later removed the actions to bankruptcy court and the claims of the other plaintiffs were dismissed; the court found pendent jurisdiction but recommended withdrawal of the reference).

In *Huebner v. Ochberg*, 87 F.R.D. 449, 455 (E.D.Mich.1980), the District Court held:

> [Exercising ancillary jurisdiction] may in fact avoid subjecting the defendants to multiple litigation [in state and federal forums].
>
> In sum, the Court concludes that it has jurisdiction to retain the Union as a plaintiff, either as an advocate of its own pendent claims or as an advocate of the rights of the patients. Viewed pragmatically, the defendants will have to litigate the same questions and face the same relief, whether the Union is in the suit or not. The Union's presence will promote judicial economy and convenience, and will help to present all the issues in their most sharply focused form. [Footnotes omitted.]

Accordingly, the Court finds that it has ancillary jurisdiction to hear these claims, and concludes that it is appropriate to exercise ancillary jurisdiction in this context. The motion to dismiss for lack of jurisdiction is denied.